# WILLIAM BOOKER

## *v.*

## WILLIAM ANDERSON AND WIFE.

1. PRIOR AND SUBSEQUENT INCUMBRANCERS — *duty of a purchaser under the latter to discharge the prior lien.* A trustee sold lands under a power conferred upon him by a deed of trust, giving notice at the sale, of a prior mortgage. The *cestui que trust* became the purchaser, and afterwards paid the debt secured by the prior mortgage. It is *held*, that in discharging the prior incumbrance, the purchaser under the junior incumbrance only acted in conformity with the terms of the sale, and was thereby only paying a part of the purchase-money. The trustee sold subject to the prior mortgage, and the purchaser took the property subject to that incumbrance.

2. SAME — *a discharge of a prior incumbrance will not operate as an assignment of it.* And when the purchaser under the junior incumbrance paid the prior mortgage debt, it operated as a discharge of the mortgage, not as an equitable assignment of it.

3. HOMESTEAD RIGHT — *under act of* 1851 — *must be released.* Prior to the passage of the amendatory act of 1857, it was not essential that the wife should join her husband, in the execution of a mortgage upon the homestead, in order to effect a waiver to the exemption created by the original act of 1851; but it was essential, even under the latter act, when the husband alone executed a mortgage, that he should, in terms, release the right, or the exemption would still exist. The mere execution and delivery of the mortgage would not have that effect.

4. SAME — *in what manner it may be waived or lost.* Since the amendatory act of 1857, the wife being invested with the homestead right by the law, she can be deprived of it in no other mode than that prescribed by the law. Her release of the right; a debt incurred for the purchase or improvement of the homestead; or a removal from and its abandonment as a homestead, will bar her right to interpose her claim. But the husband has no power in any other mode to affect the wife's right.

5. In this case, in the year 1858, a husband and wife executed a deed of trust upon their homestead, the deed containing no release or waiver of their right thereto. The debt thereby intended to be secured, having matured, and remaining unpaid, the trustee named in the deed proceeded to sell the premises under the power therein given; the *cestui que trust* became the purchaser and obtained a deed from the trustee. Afterwards, the grantor still remaining in the occupancy of the premises, the husband took a lease thereon from the purchaser at the trustee's sale, for one year, and paid rent therefor. Soon after the expiration of the term of the lease, the lessor commenced an action of forcible detainer against the lessee to recover possession of the premises. It was *held*, that nothing had been done which could operate as a release or waiver of the homestead right. The right not being released by the deed, no title passed thereby, nor by the sale under the deed, as against that right. The fact that the husband accepted a lease from the purchaser under the deed, and paid him rent, did not change the rights of the parties in that regard.

6. SAME — *of the time and manner of asserting the right.* In such case it was *held*, the claimants of the homestead could assert their right in equity, by original bill, and thereby enjoin the further prosecution of the action of forcible detainer, and have the trustee's sale set aside.

7. The wife was not bound to set up her right in the action of forcible detainer. Had the right been in the husband, there would be force in the objection that it was not asserted in that suit. But the right was in the wife, and she had no other mode of asserting it than by bill.

8. SAME — *of the excess above one thousand dollars.* Where a deed of trust is executed by husband and wife upon their homestead, there being no release of the homestead right, to the extent of one thousand dollars the deed will not become a

lien. Should the premises be worth more than that sum, no doubt the deed would be valid and binding as a lien upon the overplus, which can be subjected to the payment of the debt to that extent, in the mode pointed out by the statute.

9. Parties — *in forcible detainer.* Where the husband is the lessee of premises, and after the expiration of the term the lessor commences an action of forcible detainer to recover the possession of the premises, the wife of the lessee is neither a necessary nor a proper party to the suit.

10. Usury — *when paid, will be deducted from the residue of the debt remaining unpaid.* Where usurious interest has been paid upon a loan of money, such usury will be deducted from the residue of the debt remaining unpaid.

11. Sales under deeds of trust — *inadequacy of price.* A sale made under a deed of trust will not be disturbed in equity by reason of any inadequacy of the price for which the land was sold, unless there has been such a sacrifice as amounts to a fraud.

Appeal from the Circuit Court of McLean county; the Hon. John M. Scott, Judge, presiding.

On the second day of May, 1854, William Anderson and George Anderson executed their promissory note for the sum of $556, payable to one Genin, one year thereafter, with ten per cent. interest; they also executed a power of attorney to confess a judgment on the note. On the same day, for the purpose of securing that note, the makers thereof, William Anderson and George Anderson, executed and delivered to Genin a mortgage upon certain real estate, included in which was a quarter section of land belonging to William Anderson, and a house and lot which said William also owned, and which he and his family at the time occupied as their homestead. The wife of said William did not join in the execution of the mortgage, nor did it contain any clause of release of the homestead right.

Afterwards, on the 14th day of April, 1858, said William Anderson borrowed from William Booker the sum of $2,250, for which he gave his note for the sum of $2,734, payable two years thereafter; and to secure this note, William Anderson and his wife, on the same day, executed and delivered to Booker a deed of trust upon the same quarter section of land and house and lot above mentioned, the grantors being still in

the occupancy of the house and lot as their homestead, the right to which was not released by the deed of trust.

The note to Booker having matured, and remaining unpaid, the trustee named in the deed of trust proceeded to sell the premises under the power therein conferred upon him, and Booker became the purchaser of the quarter section of land, for the sum of twelve hundred dollars, and of the house and lot for one thousand dollars, for which he obtained a deed from the trustee. Afterwards, on the 12th of March, 1862, William Anderson took from Booker a lease in writing, of the house and lot, for one year, and continued in the occupancy thereof. After the expiration of the lease, on the 19th of March, 1863, Booker commenced an action of forcible detainer against Anderson, to recover possession of the leased premises.

Pending the term of Anderson's lease, on the 15th of July, 1862, Booker paid off the debt secured by the Genin mortgage, and satisfaction thereof was entered upon the mortgage, in this form:

" I acknowledge satisfaction of the debt within mentioned, by payment thereof by William Booker, by hands of Daniel Peck, Esq., and release the land mortgaged therefrom.

Signed and sealed the 15th July, 1862.

THOMAS H. GENIN.    [Seal.]"

During the pendency of the action of forcible detainer, Anderson and his wife exhibited their bill in chancery in the court below, against Booker, reciting the foregoing proceedings, and alleging that the quarter section of land sold under the deed of trust, was mostly improved, and at the date of the trust deed was worth about $4,000, and that the house and lot was worth about $3,000, subject to the prior incumbrance of about $600. They assert their homestead right to the house and lot, insisting that nothing had been done by which it had been released or waived.

They also alleged that the amount of the note given to Booker, exceeding the sum of $2,250, was for interest, and that it contained usury.

They prayed that Booker be enjoined from any further prosecution of his action of forcible detainer to recover their homestead; that the deed of trust, and all proceedings had under the same, be canceled, so far as the house and lot is concerned, and for general relief.

Booker answered the bill, admitting the complainants are husband and wife and have children, and occupied the house and lot as alleged; but denies it is their homestead, insisting that since 12th March, 1862, they have occupied the premises as his tenants.

Admits the loan of $2,250; says he was loth to make the loan; made it at the urgent solicitation of both Anderson and wife; that the rate in the trust deed was made up of the $2,250, the sum loaned, and ten per cent. per annum, compounded semi-annually thereon until maturity.

Makes deed of trust an exhibit of answer; denies that the property conveyed by the deed of trust was worth anything like the sums mentioned in the bill, and that at the sale they sold for their full value.

Says the sale by the trustee was advertised more fully and longer than the terms of the deed required; it was advertised both in the paper and by printed hand bills; that Anderson was present at the sale, and made no complaint.

Admits Booker became the purchaser, and says the property sold for its cash value; that the trustee made Booker a deed; land sold for $1,200, and house for $1,000 ; says Mrs. Anderson did privily acknowledge the trust deed, freely, voluntary, &c.; that before the sale, Booker offered to extend the time of payment for a term of years, if Anderson would pay him his interest, which Anderson declined to do; that after the trustee's sale and deed made by him to Booker, Booker offered to give Anderson a bond to reconvey the land to him at any time within five years, provided Anderson would pay to Booker interest at ten per cent. per annum from that time, which proposition Anderson, after taking time to consider, declined, saying he would prefer to let the property sell to being in debt; after the sale by the trustee, Anderson told Booker that

it did not then suit him to move, and Anderson proposed to Booker to rent the house and lot for one year, and Booker and Anderson then entered into a contract of lease for one year for the house and lot, all of which was done with the knowledge, concurrence, and consent of Mrs. Anderson, and after Anderson took legal advice thereon; lease made exhibit of answer.

Anderson then had his insurance policy canceled, and Booker then had it insured in his name; that there was a prior incumbrance on the property, to wit: the Genin note and mortgage; property was sold at trustee's sale, subject to this prior incumbrance; that Booker afterwards, to wit: 10th day of July, 1862, paid on said prior incumbrance, the sum of $622.40.

Insists if complainant succeeds in setting aside the trust deed, Booker should be substituted for Genin, the owner of the prior incumbrance, and that the same, in equity, is not satisfied.

That after crediting the note secured by the trust deed with the net proceeds of the sale, under the trust deed, there was still due to Booker about $900 on said note, and that after the execution of the lease, Booker gave up to Anderson said note. Answer claims that in case complainant succeeds in setting aside the sale, Booker would be entitled to be restored to all his rights under said note.

Insists that the property brought a fair cash value at the trustee's sale.

Insists that by virtue of the trust deed, sale under the same, lease, &c., Anderson and wife are entirely divested of all rights in and to said property.

Admits the bringing of the action of forcible detainer, and insists that he has a right to prosecute it, and that he is the owner, both in law and equity, and entitled to the possession of said house and lot.

Insists that there is no equity in the bill, and that it should be dismissed.

On the coming in of the answer the complainants obtained leave to amend their bill, making a correction in regard to the interest contained in the note to Booker; they say the note

secured by the trust deed only contained ten per cent. interest, compounded semi-annually, but, that Anderson was to pay fifteen per cent. interest, and the interest was to be paid semi-annually, and that for the extra five per cent., Anderson gave four small notes, each for six months, interest at five per cent. per annum on the $2,250; and insist that the Genin mortgage is not an incumbrance on the homestead.

Booker filed his cross-bill, asking that in the event the court should grant to the complainants the relief sought by their bill, it will at the same time grant to defendant a decree *in personam* against William Anderson for the $1,000 for which the house and lot sold at the trustee's sale, for the amount of the Genin note, and for the amount due on the note given up to Anderson on getting the lease.

In his answer to the cross-bill, Anderson insists the house and lot is his homestead, and, therefore, as to it, the trust deed should be declared void.

He insists that Booker should take nothing of the Genin note and mortgage, as he purchased at the trustee's sale subject to that incumbrance.

He sets up the usury in the loan from Booker; the payment of the five small notes for the extra five per cent., and one payment of interest on the large note; and payment of rent, $100; in all claiming as payments $530.12. He says the land bought by Booker was worth all that was due him. Admits that he was present at the trustee's sale, but denies that he assented to the sale of the homestead.

On the hearing, the complainants introduced testimony, showing their occupancy of the house and lot as a homestead; and the value of the land sold under the deed of trust, ranging from $8 to $20 per acre, according to the opinions of the different witnesses. They admit the payment of the Genin note by Booker, to the amount of $622.

*Robert E. Williams* testified on behalf of Booker as follows:

The day after the sale under the trust deed, and after I had made out and delivered the deed to Mr. Booker, Booker and Anderson were together in my office; Booker told Anderson

that he did not want his property; that he would rather have
the money, and if there was any speculation in the property,
he would rather Mr. Anderson should have it; all that he
wanted was his money and interest; and then made Mr. Ander-
son this proposition:

He would put the debt at ten per cent. interest, if Mr.
Anderson would pay him the interest annually; he would
enter into a written obligation with him; that he might have
five years to pay the debt in; and, in the meantime, whenever
he could sell the property for enough to pay the debt, he might
do so, and have all over the debt and interest he could sell it
for. Mr. Anderson replied that the proposition seemed fair,
and he wanted a little time to consider it before he gave him
an answer, and Mr. Booker told him he could take time to con-
sider it; whereupon Mr. Anderson went out of the office, and
after being absent some time, he returned and made, in sub-
stance, the reply: That he had considered on the proposition,
and although it seemed fair, and all he had a right to ask, yet,
owing to the largeness of the debt and the hardness of the
times, and the uncertain condition of the country, he believed
he would not undertake it. Says he, " You will have to pay
the Genin debt, and that is about all the debt I owe besides
yours, and it will put me about out of debt; and I have come
to the conclusion that I had better be out of debt and not own
the property than owe these debts and have it. If I am out
of debt I can support my family and get a new home." Booker
replied, " Just as you say," and that ended the subject of con-
versation. Then, according to my best recollection, Mr.
Anderson said to Mr. Booker, it didn't suit him then to move,
and that he would like to rent the house of him; that he sup-
posed it would be for rent, and that he might as well rent it
as any one else. Mr. Booker replied, certainly he would rent
him the house; that he would not sell it until times improved;
that he wanted a good man in it, and would lease it to him for
one year, with the privilege of two, if he wanted it. After
some little talk about the terms, I think Mr. Anderson pro-
posed the terms, and Mr. Booker assented; they were both on

good terms; Mr. Booker asked me to draw up the lease, and I commenced writing it; Booker asked Anderson if I should put in the privilege of remaining in it a second year on the same terms; Anderson replied it was not necessary, that if he wanted it longer they could agree upon it; and I thereupon drew it for one year. I cannot recollect whether before or after the lease was written, but my best recollection is it was after, that Anderson again went out of the office, and took the lease with him, and after being absent some time, he returned, and the lease was executed by both parties, and given to me to hold. After making the sale, I had deducted the charges which Mr. Booker paid me, and credited the balance on the big note, and had given it back to Mr. Booker. Immediately after the lease was executed and given to me to keep, Mr. Booker took the note and gave it to Mr. Anderson, saying to him, " When I go home I will write to Mr. Genin, get the amount of his debt, and pay it. I give you up your note, and keep the property, pay the Genin debt, and that puts you out of debt, and you can get a new home."

Mr. Anderson seemed very much pleased, and privately told me that he was astonished at Mr. Booker's liberality; that he did not expect it.

Booker told Anderson that he wanted him to have his policy of insurance on the house canceled, and he would take one out in his own name. Anderson said he would have it done, and Booker instructed me so soon as I was advised that Anderson's policy was canceled, to take one for him. A short time afterwards I was notified by Dr. Crothers, the agent of the insurance company, that Anderson's policy was canceled, and I took out a policy for Booker. Mr. Anderson paid me the first installment of rent about the time it was due, and the last a little after it was due.

During some part of the conversation, and before the execution of the lease, my best recollection is that it was immediately after Anderson had declined to accept the five year arrangement, Booker proposed to Anderson that if Anderson and his wife would make to him a quit-claim deed to the property sold

under the trust deed, he would give up the note and square it up, which Mr. Anderson declined to do. At the time of the sale I was acting as trustee. Booker had no other counsel here, and Booker consulted with me, and prior to the sale I was Booker's counsel; don't know that he had any other. I advertised the sale in a paper, as required by the trust deed, and put up posters, and tried to get a good price for it, and gave all the publicity I could. Mr. Anderson was present at the sale, and made no objection that I heard. The trustee sale was made subject to the Genin mortgage; that is, I gave notice at the sale of the existence of this prior incumbrance. In the proposition made by Booker to Anderson for the quit-claim deed above spoken of, I am not positive, but it is my best recollection, that Booker said he would like to have a release of the homestead.

The court below entered a decree, finding that at the date of the trust deed, the house and lot was the homestead of Anderson; that the debt to Booker was not for the purchase money or improvements of the homestead; finds that Anderson and wife in the trust deed did not waive their statutory right of homestead; that the trust deed, so far as it pretended to convey said house and lot, is void: and that the lease between Anderson and Booker is void, and that the title to said house and lot is still in complainants; that the amount of money loaned by Booker to Anderson was $2,250; and that the contract was usurious; that Booker is entitled to claim of Anderson $2,250, less the amount of the sale of the land, to wit: $1,200, and the entire other payments by Anderson, including the $100 for rent, in all amounting to $350.12; that there is due to Booker, under his cross-bill, after allowing Anderson credit for everything paid, the sum of $529.88; that Booker paid to Genin $622.40; that said Genin mortgage was a prior incumbrance on all the property in the trust deed, and other property; that Booker is entitled to hold the Genin note and mortgage, as assignee of the same.

The court then decrees that the trust deed, so far as it purports to convey the house and lot, be taken and held as void;

that the sale and deed by the trustee, so far as the house and lot were concerned, be void, and that the lease be held void; and that the title of complainants to said house and lot be taken and held as if said trust deed, sale under the same, deed by virtue of said sale, and said lease, had never been made.

Decrees that the injunction be made perpetual.

Decrees that Anderson, within sixty days, pay to Booker $529.88, and in default thereof, Booker have execution against Anderson for that amount, as upon a judgment at law; that Booker be invested with the same rights under the Genin note and mortgage as if he were an assignee of the same. Thereupon, Booker took this appeal, and now insists, *first*, that the court erred in not dismissing the complainants' bill; and *second*, in not decreeing (if it sustained the bill) in favor of appellant on his cross-bill, the amount the house and lot sold for, the amount paid on the Genin note and mortgage, and the amount due on the note given up to Anderson by Booker.

Mr. R. E. Williams, for the appellant.

We seek to reverse this decree and have the bill dismissed on the ground that the bill has no equity.

1. He who seeks equity must do equity.

This is a broad maxim, as old as equity jurisdiction, and needs no special reference to authorities to sustain it. Does this bill, giving it as favorable a construction as can be asked by the appellees, violate this maxim? I think it does. The bill sets up that appellees borrowed money of Booker and gave as a security for its payment a trust deed on the homestead and a tract of land; that the right of homestead was not specially waived: that there was usury in the loan; that the debt was not paid; the trustees sold the premises under the trust deed, and appellant became the purchaser; after the purchase, appellee took from appellant a lease of the house and lot; at the expiration of the lease, appellant commenced an action of forcible detainer to get possession of the house and lot. The bill seeks to enjoin this action, and to have the trust deed and lease canceled. Now, even if there were usury in the debt to

Booker, it is clearly equity that he should be paid his principal. 1st Sto. Eq. 64th C; *Pope* v. *Lord Duncannon*, 9 Sim. Eng. Ch. Rep., vol. 16, p. 177.

2. A court of equity will not relieve against usury, unless the party asking relief first pay or tender the principal and legal interest. *Rogers* v. *Rathbun*, 1 Johns. Ch. 367; *Tupper and another* v. *Powell et al.*, Id. 440; *Leguux* v. *Wante*, 3 Har. and John. 184; *West* v. *Beaves*, 4 Id. 508; *Marks* v. *Morris*, 2 Munf. 407; 2 Desau. 333.

The sum loaned was $2,250; all that was paid, setting aside the sale of the house and lot, was about $1,700, so that Booker was not paid his principal by over $500; in addition to this, Booker had paid, to remove a prior incumbrance, and to pay a debt of Anderson's, $622, so that setting aside the sale of the house, Booker was out in money about $1,100, without any interest at all; so that it is clear complainants had no equity on the ground of usury. Upon what, then, is the equity based? If by the trust deed, and the sale under it, and the lease, Anderson and wife had not parted with their title to the homestead, then they had a perfect title at law, and had no right to call upon a court of equity for aid; this is clear law, and needs no authorities to be quoted in its support.

Their pretended ground of equity, if, indeed, their bill makes any pretense to equity at all, is that Booker had got an advantage by the lease. Now, admitting, for the sake of the argument, that he has, will a court of equity deprive him of this advantage, in favor of Anderson until Anderson pays or offers to pay him, at least, the sum borrowed? Clearly not. The above quoted authorities are good on this point.

3. If a party, by fair dealing gets a legal advantage, a court of equity will not deprive him of that advantage in favor of a party who does not propose to do full equity. *Cunningham* v. *Pithian et al.* 2 Gill. 650; *Basset* v. *Nosworthy*, Leading Cases in Equity by Hare and Wallace, vol. 2, part 1, p. 1, with notes to this case. I think the doctrine laid down in this case, and the notes to it, and authorities cited, fully sustain the point, although that was the case of an innocent purchaser for

value.  Surely the appellees, until they pay, or offer to pay Booker the amount of the principal, have no equity to deprive him of any legal advantage he may have obtained by his lease. Appellees have no greater equity to deprive him of this legal advantage than an heir to set aside a void will, or any of the other cases cited in the text or notes to *Basset* v. *Nosworthy*, above.

4.  The homestead right is a legal right, not an equitable one, therefore, a court of equity is not the proper forum to enforce it in the first instance.  If Anderson and wife have not parted with the homestead, they can defend themselves at law.  If they have, a court of equity cannot restore the right to them.

Anderson comes into a court of equity to enforce an unconscientious legal advantage; he got Booker's money upon the face of the security furnished by the trust deed; both parties at the time the trust deed was made, supposed that by means of it the homestead could be conveyed.  Anderson now discovering, as he supposes, a technical legal advantage, in the fact that in the trust deed the right of homestead is not formally waived, comes into a court of equity to ask its aid in enforcing this unconscientious technical legal advantage, and that without paying or offering to pay Booker even the principal of his money.  Surely a court of equity will not thus aid him.  The pretense that the quarter section of land paid Booker, cannot avail, as the sale was fairly made.  There is no pretense in the bill that it was not fairly made, and that the land in fact, brought at the time its fair cash value, had it not been incumbered, but with the incumbrance, it certainly brought its full cash value at the time, as is disclosed by the evidence.  But even if it did sell for less than, in the opinion of others, it ought to have brought, this cannot avail.  *Noyes* v. *True et al.* 23 Ill. 503.

No advantage was taken of Anderson in getting the lease; the evidence shows that he first proposed it; went into it voluntarily; and because at the end of the year, owing to the peculiar state of the times, the property has enhanced in value,

he concludes to hold on to it, and asks the aid of a court of equity to enable him to do so, and that without even paying or offering to pay the principal of the sum he had borrowed. Surely this record does not disclose a case on the part of the complainant to call for the peculiar sympathy of the court. Complainant seems all the time to have been watching for an opportunity to get a legal advantage, and when he thinks he has obtained it, he holds on to it, without any pretense fairly made of an intention to abide by the rules of equity or common justice.

Upon the whole case, I think the bill is clearly without equity, and should have been dismissed upon the hearing ; and the decree should be reversed in this court and the bill dismissed. But even should the court think that the complainants are entitled to the relief sought by the bill, upon the cross-bill appellant should at least have had a decree for the amount the house and lot sold for, and the amount paid on the Genin note and mortgage. The house and lot sold for $1,000; this was a payment on the note of that amount. The sale should not have been set aside without a decree in favor of Booker for that sum. (*Perkins* v. *Conant*, 29 Ill. 184.) In addition to this, he should have had a decree for the $622 paid to Genin at the request of Anderson, and upon the faith of keeping the house, as disclosed by the evidence, and which left Anderson so much less in debt, as there was both a note and a mortgage.

And for this error the decree should be reversed, but I think the first three errors are well assigned; and for these errors the decree should be reversed and the bill dismissed.

Messrs. BRIER & BIRCH, for the appellees.

Our reply to the points made by appellant's attorney, is as follows :

1. If, upon the maxim there stated by him that, "he who seeks equity must do equity," the court should hold, as there contended, that Mrs. Anderson has no standing in a court of equity till she or her husband has tendered to appellant the principal, or any balance of principal that may be due appel-

lant after throwing off the usury, and that until such tender is made, appellant should be allowed to go on with his suit of forcible detainer for the possession of the homestead, then surely, in all cases, the homestead is secured to the wife only when she is able to pay her husband's debts. She may *never* be able to make such tender.

The gist of the bill is, that appellant, having loaned money to the husband, procured from the husband and wife a trust deed upon certain real estate, including the homestead, to secure the loan. It is agreed that there is no sort of release of the homestead expressed in the face of the deed, or its acknowledgment. The debt not being paid, the trustee sold and conveyed, with the other lands, the homestead also to appellant, and the husband thereupon took of appellant a lease of the homestead for one year. The lease having expired, appellant commenced his suit of forcible detainer, and was proceeding to dispossess the wife and children, as well as the husband, of their homestead, and prays for an injunction. This is the gist of the bill. It is more specific, however, and states the debt secured, what part was principal, what part was usury, what amount of money had been paid, and what appellant bid in the lands for at the sale; and alleges, in substance, that, without the homestead, appellant got more by bidding in the other lands, estimating them at their reasonable worth, than the balance due him.

If these allegations do not help the bill, they at least do not hurt it any. The only thing sought by the bill was the enjoining of the suit of forcible detainer, and a decree declaring the trust deed, as to the homestead, and the sale under the same, and the lease, void, in order that appellees, but more especially the wife and children, might enjoy their homestead in quiet, as contemplated by the homestead act.

Appellees, by their bill, did not seek for any decree in relation to the debt itself, or for any account in respect to it.

2. That "a court of equity will not relieve against usury unless the party asking relief first pay or tender the principal and legal interest."

Our answer to the first point is our answer to this also. Appellees did not seek any relief against usury till appellant, by his cross-bill, prayed the court that an account be taken, and for a decree *in personam* for balance against William Anderson. Certainly by his answer to cross-bill, it was proper that he should set forth the usury and all payments made, and the proofs having supported the answer, the decree upon the cross-bill must be right.

Upon the cross-bill the case is simply this: The sum actually loaned was $2,250, and for that loan, by agreement, a note was given, compounding interest every six months for two years, making the note $2,734.88, and at same time four small notes were given for extra five per cent. during the two years.

There is no controversy but that the contract was usurious and governed by the usury act of 1857. The amount of moneys paid upon the loan were the four five per cent. extra interest notes, each for the sum of $56.25 — the sum of $205.12 being interest upon the $2,734.88 at fifteen per cent. for six months — the sum of $100 under the lease; cash in all amounting to $530.12; add to these payments $1,200, the amount of the sale of the 160 acres of land, in all $1,750.12, which, deducted from the sum loaned, $2,250, leaves the amount of the decree *in personam* against Wm. Anderson, under the cross-bill, as found by the court, $530.12.

Now the reason for the interposition of a court of equity, as stated by the original bill, is that the wife could make no defense at law to the forcible detainer suit by reason of the lease accepted by her husband. She and her children were about being circumvented by appellant of those legislative provisions made for her and her children's special benefit. She was no party to this suit of forcible detainer, and could not be made a party. The husband could not deny in that suit, under the lease, but that appellant was his landlord, and that he was holding over.

But it is contended that as appellant, by his lease, got a legal advantage, a court of equity will not " deprive him of this advantage in favor of Anderson until Anderson pays or offers

6 — 35TH ILL.

to pay him the sum borrowed." We say the authorities there quoted are not in point, for how can appellant pursue such an advantage without making it effective and damaging to the wife and children. The wife did not owe him the debt, nor had she given him any advantage. The trust deed gave him none, for as to the homestead it was a nullity. *Patterson* v. *Kreig*, 29 Ill. 514.

3. His third point is the same thing over again, and the authorities cited are not upon any parallel case. If the homestead act made no provision investing the wife with an equal right to the homestead, independent of the husband's debts or his separate acts, the cases cited would be nearer the point. The homestead law is remedial, and to be liberally construed. 25 Ill. 610; 23 Id. 542.

4. Under the fourth point, also, it is insisted that "the homestead right is a legal right, and not an equitable one; therefore, a court of equity is not the proper forum to enforce it in the first instance" — "they can defend themselves at law," &c.

It is true, as we suppose, that the homestead right is a legal right. We say, too, that by legislative enactment the wife has that legal right, in herself, as fully and effectually as has the husband; and that she will retain that legal right against everybody until she has relinquished it in the precise form contemplated by the homestead act. This court has decided over and over again how that relinquishment is to be made. (See 21 Ill. 40; 23 Id. 541; 29 Id. 514.)

Now, Mrs. Anderson having the legal title of her homestead, and being in the peaceable possession of it, what does appellant seek to do? By his suit of forcible detainer, not against her, but against her husband, upon a lease to which she was not a party, he is seeking to obtain a writ of possession by which he may eject her and her family from the premises. See case of *Goodnough et al.* v. *Sheppard*, 28 Ill. 81, particularly page 83 of that opinion of the court. We say, in this case, as the court there say: "It would be a most extraordinary feature in the judicial polity of this State if its courts possessed no

power to protect a man in the enjoyment of property of which he is the rightful owner, and in peaceable possession." In that case the sheriff had a writ of possession against a party, under which he was about to put another party out of the possession of his own property. And the court there ask: "What had the appellee to do with the proceeding of Goodnough against Wall in the action of forcible detainer?"

So we ask in this case: What had the appellee, Mrs. Anderson, to do with the proceeding of forcible detainer brought by appellant, Booker, against her husband. Mrs. Anderson could not be affected in any possible way, she "being in the possession under an independent title not derived from either of the parties litigant."   *   *   *   "It is a plain case of an attempt by process of law against one party to subject another party, and a stranger to the inconvenience of being turned out of possession of property which he lawfully owns without any judgment or process against him."   *   *   *   "The case is full of equity, and presents a flagrant case for the exercise of the restraining power of the court, and the court did right in making the injunction perpetual." That case in principle is this case.

It is true, in this case, that Wm. Anderson, one of the appellees, who was a party to the suit of forcible detainer, is a party also to the bill for injunction, but he was a necessary party. The wife could not avoid joining her husband unless he had refused to allow himself to be made a party complainant.

We say then that it cannot admit of a doubt but that the chancellor did right in taking cognizance of the bill for the reasons stated above — not for the purpose of giving complainants the benefit of the plea of usury, as appellant's attorney tries to make it appear. And the chancellor thus having jurisdiction of the cause, it was proper that he should render such decree in relation to the assumed sale of the homestead, and the lease, &c., as would prevent any future proceedings for the same or similar purposes.

And further, appellant having sought by his cross-bill for an account to be taken of what was due him from the appellee,

William Anderson, and for a decree *in personam* against him, the court did right by purging the transaction of all usury, and if so, there could be no error in making the decree the sum of $529.88 against Anderson.

We do think, however, under the evidence, the court erred in decreeing that Booker be invested with the same rights under the Genin note and mortgage as if he were an assignee of the same; for the reason that the testimony of all the witnesses shows that the 160 acres of land, bid off by Booker at $1,200, being only $7.50 per acre, was really worth, at the day of sale, not less than $12 per acre in cash, and most of the witnesses put it at $15 and one at $20 per acre. The trustee, at the sale, gave notice that the purchaser was to take the land subject to the Genin mortgage; and from other testimony it clearly appears that appellant bid off the land with the understanding that he was to pay off the Genin mortgage. This is certainly the only reason he got the land for the $7.50 instead of the $12, $15 or $20 per acre; and the difference between the $7.50 and the $12 per acre, for that 160 acres, is more than the $622.40, the amount of the Genin note and mortgage; and yet Anderson having thus clearly and equitably paid this $622.40 once, by the sale of this land, is now, by the decree of court, liable to pay it again. It seems to us it would have been more equitable either to have set the sale aside, as to the 160 acres, and tacked the Genin mortgage upon it, with a commissioner to sell, &c., or to have decreed the last named mortgage, satisfied and canceled, as by the former sale it virtually was. So, at least, appellant has no cause of complaint.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

The evidence shows in this case, that appellee, Anderson, together with his brother George, on the second day of May, 1854, executed their promissory note for $556, payable to one Genin, at one year, with ten per cent. interest. They executed a power of attorney to confess judgment on the note, and a

mortgage to secure its payment. It embraced the property in controversy as well as other real estate. Afterwards, on the 14th day of April, 1858, appellees executed a deed of trust on the same premises, to secure the payment of a note to appellant for $2,734.88, of even date, and payable within two years. Default having been made in the payment of the money, the trustee proceeded to sell, when appellant became the purchaser of the quarter section of land for the sum of twelve hundred dollars, and the house and lot for one thousand.

It likewise appears, that after this sale was made, appellee, Anderson, received of appellant a lease of the house and lot for one year, at a rent of one hundred dollars. Appellant at that time surrendered the note to appellee. It appears that appellee paid to appellant, including the one hundred dollars paid for rent, the sum of $529.88. Appellant paid off and satisfied Genin's note and mortgage. It appears that appellant, in fact, only loaned appellee $2,250, while the note was taken for $2,734.88, but it was insisted that the amount above the sum actually loaned, was ten per cent. interest compounded, added to the principal. The lot had upon it a dwelling which was occupied as a residence and homestead by appellee and his family, at the time when the deed of trust was executed, and never has been abandoned as such. After the lease had expired, appellant commenced an action of forcible detainer to recover possession of the house and lot. This bill was then filed to enjoin that suit, to set aside the sale, upon the ground that the homestead was not subject to sale, inasmuch as the wife had not released her right to claim it, and because the debt was usurious. On the hearing relief was granted, and a decree pronounced on the cross-bill for the balance due, after deducting the usury, and an execution was awarded for its collection.

The prior mortgage to Genin was a lien upon the land, but was not upon the homestead. At the time it was executed the law did not require the wife to join the husband to render the release of the right effectual; but it did require the husband to execute a release to authorize a sale of the property under a judgment or decree, and appellee failed to release the

right in the Genin mortgage. Whilst the mortgage took effect as to the land it only became operative as a lien on the homestead for any sum that the homestead might have been worth over one thousand dollars.

The mere execution and delivery of a mortgage does not release the homestead.

When appellant paid and discharged the Genin mortgage, it was in conformity with the terms of the sale of the land. The trustee sold the land subject to, and the purchaser took it with the incumbrance of the Genin mortgage. And when he paid the Genin mortgage, it was only a part of the purchase-money of the land, and was not for the purpose of procuring an equitable assignment of the mortgage. The land, and not the house and lot, should bear the burden of that mortgage, because the land was purchased subject to that incumbrance. Nor does this work any hardship, as the purchaser deducted the amount of this lien from the price he was willing to give for the property. And other bidders would, of course, offer that much less than they were willing to give. It would also, under the circumstances, be inequitable, to treat what the party intended for a satisfaction as an assignment and transfer of a mortgage, and to revive an extinguished lien.

The sale of the homestead under the deed of trust conferred no title as against the homestead right. The wife having failed to release her right to claim the benefits of the homestead law, in the mode pointed out by the statute, to the extent of one thousand dollars the deed of trust failed to become a lien. If worth more than that sum, it no doubt was valid and binding as a lien upon the overplus, which could be subjected to the payment of the debt to that extent, in the mode prescribed by the statute. But as no title as against the homestead right passed by the trustee's sale, the homestead remains as though the sale had not been made. Appellant insists that the property is worth largely more than one thousand dollars, whilst appellee insists that the latter sum is its full value.

We, however, perceive no reason for setting aside the sale of the land. It was authorized by the power conferred by the

deed of trust. The trustee seems to have conformed to its requirements in conducting the sale, and no fraud or oppression is shown. Witnesses say it was perhaps worth twelve or fifteen dollars per acre, but at a forced sale it might have been had for less. The price given by appellant was about eleven dollars and twenty-five cents per acre, including, as we have seen it did, the Genin mortgage as a part of the purchase-money. This does not show a sacrifice of the property, requiring the interposition of a court of equity. It is not probable that it is a greater difference than usually occurs on a forced sale of such property. And unless there has been such a sacrifice as amounts to a fraud, equity will not relieve. We think the sale of the land fair and fully within the scope of the power conferred upon the trustee by the deed, and that it was valid and binding. The court below then erred in canceling and setting aside the sale of this land. It operated as a payment of the sum of twelve hundred dollars bid on the debt secured by the deed of trust.

But as appellant acquired no title as against the homestead right by his purchase at the trustee's sale, that portion of the sale was properly vacated. Nor did the fact that appellee Anderson received a lease from appellant of the homestead change the rights of the parties. The wife being invested by the law with this right, she can only be deprived of it in the mode prescribed by the law. Her release of the right, a debt incurred for the purchase or improvement of the homestead, or a removal from and its abandonment as a homestead, will bar her right to interpose her claim. But the husband has no power in any other mode to affect the wife's right. His receiving a lease and paying rent to appellant had no such effect.

It is insisted that a court of equity will not assume jurisdiction to enjoin a suit of forcible detainer, where a defense is purely statutory. Admitting this, as a general proposition, to be true, it undoubtedly has its exceptions. If the homestead right was in the husband, there would be force in the objection. But here the right is in the wife, and she has no other mode of asserting it than by bill. She is not a party to the suit at

law, nor is she a necessary or even a proper party. A recovery against the husband would as effectually deprive her of the right as if she had joined in the release, at least during the continuance of coverture. Under such circumstances it is manifestly just and equitable to permit the wife to assert her rights in a court of equity, where she can alone obtain enforcement of them.

The decree of the court below must be reversed, and the cause remanded, with instructions; first, to perpetually enjoin the action of forcible detainer; next, to enjoin the assertion of any right under the Genin mortgage. That the bill be dismissed as to the sale of the quarter section of land; that the sale of the house and lot be set aside and the lease be canceled. That the court ascertain the sum due on the twenty-two hundred dollar note, after deducting the usury, and all payments of interest, whether for usury or otherwise, and the rent paid for the use of the house and lot, likewise, the twelve hundred dollars for which the land was sold, and decree the payment of the balance to the appellant, and decree it to be a lien upon the homestead, over and above one thousand dollars, and direct its sale in the mode pointed out in the statute, in case it exceeds in value one thousand dollars, and award execution for any balance that may remain unsatisfied, and that the costs in the court below be equally divided.

*Decree reversed.*