# N. N. WINSLOW *et al.*

## *v.*

# T. J. NOBLE *et al.*

*Filed at Springfield Sept. 30, 1881—Rehearing denied January Term, 1882.*

1. HOMESTEAD—*what indebtedness is for purchase money.** Where a party exchanged land on which there was an incumbrance, for another tract, agreeing to discharge the incumbrance, and taking a deed in which a lien was reserved to secure the performance of such agreement, and afterwards borrowed money with which to relieve the land so given by him in the exchange, from the incumbrance, giving a mortgage on his own land to secure its repayment, it was *held,* that the money so borrowed was in no sense purchase money of the land mortgaged by him.

2. SAME—*enforcing in equity, party must do equity.* Where the owner of land which had been sold on foreclosure of a mortgage which failed to release the homestead, induced another to purchase the land by taking up the certificate of purchase, the time of redemption having nearly expired, and pay him the balance of the purchase money, $400, and accepted a lease from such purchaser, but learning of the defect in respect to the release of the homestead refused to surrender possession to the purchaser, and filed his bill to enjoin the recovery of possession by forcible detainer, without paying back the $400 received by him, it was *held,* that under the maxim, he who seeks equity must do equity, and come with clean hands, the complainant was not entitled to the relief sought.

3. SAME—*abandoned, by accepting lease of premises.* Where the owner of land sold on foreclosure against him, sells his interest to another, who procures an assignment of the certificate of purchase, and pays the balance of the price to such owner, and the latter, after a deed is made on the foreclosure sale, takes a lease of the person so purchasing, the accepting of such lease will be a surrender and abandonment of the premises, within the meaning of the Homestead act, and the former owner will have lost his homestead,

---

*Further as to claim for purchase money being protected as against the right of homestead, and what constitutes purchase money: *Weider* v. *Clark,* 27 Ill. 251; *Miller* v. *Marckle,* id. 402; *Eyster* v. *Hathaway,* 50 id. 521; *Best* v. *Gholson,* 89 id. 465; *Allen* v. *Harley,* 66 id. 164; *Austin* v. *Underwood,* 37 id. 438; *Magee* v. *Magee,* 51 id. 500; *Bush* v. *Scott,* 76 id. 524.

Money borrowed of a third person and invested in the purchase of land, is not purchase money, within the meaning of our Dower law. *Jeneson* v. *Garden,* 29 Ill. 199.

The second section of the Homestead act of 1851 was intended to protect the vendor's lien. *Phelps* v. *Conover,* 25 Ill. 314.

though not properly released in the mortgage under which the sale was made.

4. Same—*former decision.* What was said in *Booker* v. *Anderson,* 35 Ill. 66, as to the effect of taking a lease under similar circumstances, can have no bearing now, as the statute under which that decision was given did not contain the clause found in the present statute, "or possession is abandoned, or given pursuant to the conveyance." *

Appeal from the Circuit Court of McLean county; the Hon. Owen T. Reeves, Judge, presiding.

Mr. Wm. E. Hughes, and Mr. M. W. Packard, for the appellants.

Mr. H. G. Reeves, for the appellees.

Mr. Chief Justice Craig delivered the opinion of the Court:

This was a bill in equity, brought by Thomas J. Noble, and Sarah J. Noble, his wife, against Nathaniel N. Winslow, and Sarah L. Winslow, his wife, to enjoin them from prosecuting an action of forcible detainer, which was then pending before a justice of the peace, to recover possession of a certain tract of land in McLean county, consisting of $45\frac{90}{100}$ acres, which was then occupied by the complainants.

There is no substantial dispute between the parties in regard to the facts. Noble, as appears, a few years ago owned 160 acres of land in Piatt county, upon which he had given a trust deed to secure a certain amount of money which he owed to one Wing. This land he traded to John R. Stewart for 45 acres of land in McLean county—the land in dispute. In the trade Noble agreed to remove the mortgage on the Piatt county land, and Stewart reserved a vendor's lien on the 45 acres, to secure the performance of Noble's agreement. Noble moved on the land in McLean county, and thereafter he occupied it as a homestead. Noble failing to pay off the

---

* The case of *Buck* v. *Conlogue,* 49 Ill. 391, upon the same question, seems to rest upon *Booker* v. *Anderson.*

mortgage on the Piatt county land, Stewart, at the request of Noble, found a man (Daniel Grow) who was willing to loan the money to be used for that purpose, and take a mortgage on the 45 acres of land. Noble and his wife agreed to give a mortgage releasing the homestead, to secure the money loaned by Daniel Grow, and a mortgage was prepared, executed and acknowledged; but the acknowledgment was defective in this, it failed to show that T. J. Noble acknowledged the release of the homestead. This defect was not, however, known by Grow or the Nobles. The money loaned not having been paid when due, Grow, in February, 1878, filed a bill in the McLean circuit court to foreclose the mortgage. The Nobles did not appear. A decree by default was rendered, and in May, 1878, the premises were sold, and bid off by Grow for the amount of his debt, and costs. In July, 1879, Noble, finding that he could not redeem the premises from the sale, went to appellant N. N. Winslow, and induced him to buy the place at $50 per acre, which amounted to the sum of $2250. There was then due Grow $2000, but he agreed to throw off $150. Winslow then paid him $1850, and took an assignment of the certificate of purchase, and accounted to Noble for the balance of the purchase price of the land—$400. Winslow had a deed made to his wife on the certificate of purchase, and as a part of the trade leased the premises to Noble from the 1st day of July, 1879, to the 1st day of March, 1880, for eight per cent on the amount he had paid for the property, and a written lease was executed by the parties. Before the expiration of the lease Noble discovered the defect in the acknowledgment of the mortgage, and refused to surrender possession of the premises, and upon being sued for possession filed this bill.

There is no controversy over the proposition that a homestead is not exempt as against a debt incurred for the purchase thereof. But the money Grow loaned Noble, for which a mortgage was taken, was not used in the purchase of the

premises—it was in no sense purchase money. The fact that Noble may have used the money borrowed of Grow, to pay off a mortgage on the Piatt county farm, which he agreed with Stewart to pay, as a part of the trade under which he obtained the land in question, does not make the money obtained of Grow purchase money. Stewart sold the premises to Noble, but he received no part of the money Grow loaned Noble. The premises were purchased long before the Grow debt was made, and hence the Grow debt could not be incurred for the purchase of the premises.

Appellant Winslow filed a cross-bill, in which it was, in substance, alleged, that T. J. Noble acknowledged (before the notary who took the acknowledgment of the mortgage) the release and waiver of his homestead rights in and to the premises described in the mortgage, and that by a mere clerical error of the notary who drew the mortgage, the certificate of acknowledgment failed to state the truth in regard to the acknowledgment. The cross-bill prayed that the certificate of acknowledgment be reformed according to the truth. The complainants interposed a demurrer to the cross-bill, which the court sustained, and this is relied upon as error.

We shall not stop to determine whether the court erred in sustaining the demurrer to the cross-bill, or not, as a correct decision of the case must rest upon other grounds, which will dispose of the case upon its merits, without passing upon that question.

Winslow, it will be remembered, became the purchaser of the certificate of purchase from Grow at the instance and request of Noble,—not for the purpose of speculating out of the land, but for the purpose of aiding Noble to save something out of the land, which had been sold, and the redemption was about to expire, and all would then be lost to him, as he then supposed. By inducing Winslow to purchase the certificate of purchase, and thus obtain the title to the land, Noble realized $400 by the transaction. Now, after Noble

has induced Winslow to make this purchase and pay all the land is worth, and has obtained from Winslow $400 and put it in his own pocket, will equity allow him to repudiate what he has done, retain the money Winslow paid for the land, and recover, by a decree in chancery, almost one-half in value of the land which he induced Winslow to purchase? We do not believe any precedent can be found which would sanction such gross inequity and injustice.

It is an old and well established rule in equity, that he who seeks equity must do equity. Let us apply this rule to the present case, and see whether the decree can be sustained. Before Noble could call upon a court of equity for relief, justice and right would require him to refund Winslow the amount of money he had paid at the request of Noble, and surely equity would not allow Noble to retain the money Winslow had paid him, and at the same time give him the land. This would be no less than sanctioning a palpable fraud.

There is another well established rule in equity which ought not to be overlooked in a case of this character, which is, that a party must come into a court of equity with clean hands, otherwise his bill will be dismissed. (*Thorp* v. *McCullum,* 1 Gilm. 614.) Can it be said that Noble's hands are clean so long as he holds Winslow's money? We think not.

There is yet another feature in this case which precludes a decree in favor of the complainant in the bill. He not only induced Winslow to purchase the land, but as a part of the purchase contract he surrendered the possession of the property to him, and became a tenant of Winslow from July 8, 1879, to March 1, 1880, at a stipulated rent. Such is the effect of the contract which was executed by the parties. It reads as follows:

"BLOOMINGTON, ILL., *July 8th, 1879.*

"I have this day bought of T. J. Noble his farm, it being the land that Daniel Grow now holds a certificate of sale of,

and occupied by said Noble, for which I agree to pay $50 per acre, as follows, to settle with and pay Mr. Grow the money due him, and pay the balance to said Noble. I further agree to let said Noble hold possession of said farm until March 1st, 1880, for which he is to pay me, *as rent,* 8 per cent interest on purchase money, from time I pay the money until March 1st, 1880. I further agree to give said Noble the first refusal to rent the said farm for one year or more, from March 1st, 1880, as may be agreed upon hereafter.

(Signed.)                                   N. N. WINSLOW,
                                            T. J. NOBLE."

In *Brown* v. *Coon,* 36 Ill. 243, where the homestead had been sold by the owner thereof, by deed which did not release the homestead as required by statute, it was held, as possession was delivered under the deed, the title passed,—that the homestead right was lost by the abandonment of possession to plaintiff's grantee, as completely as if there had been a relinquishment in the form required by the statute. Here, Noble made no deed because a deed was not necessary, as the title had passed on the foreclosure sale. He did not move off the premises and surrender up actual possession to Winslow, but when he became Winslow's tenant under a written lease, the legal effect was the same as if he had moved off and Winslow had moved on the premises.

We are, therefore, of opinion that Noble abandoned his homestead rights. Indeed, under the language of sec. 4 of the Homestead act, Rev. Stat. 1874, p. 497, we do not see how Noble can claim homestead rights in the premises. It declares: "No release, waiver or conveyance of the estate so exempted shall be valid unless the same is in writing, subscribed by said householder, and his or her wife or husband, * * * and acknowledged in the same manner as conveyances of real estate are required to be acknowledged, or possession is abandoned, or given pursuant to the conveyance." Here, when Noble leased the property and became the tenant

of Winslow, possession, within the meaning of the statute, was given pursuant to the conveyance. *Eldridge* v. *Pierce*, 90 Ill. 474.

What was said in *Booker* v. *Anderson*, 35 Ill. 66, can have no bearing here, as the statute under which that decision was rendered did not contain the clause, "or possession is abandoned, or given pursuant to the conveyance," as the statute now does.

In any view we have been able to take of the case, we perceive no ground upon which the decree can be sustained.

The decree will be reversed, and the cause remanded, with directions to the circuit court to dismiss the bill.

*Decree reversed.*

Mr. Justice Scott dissenting.