MARGARET BARRETT *et al.*

*v.*

JOHN WILSON.

*Filed at Springfield March 28, 1882.*

1. HOMESTEAD—*execution sale is void.* A sale of a party's premises, occupied and held by him as his homestead, which are of less value than $1000, on execution against the occupant, is void, and may be set aside on bill by the householder, when his homestead has not been waived, released or abandoned.

2. SAME—*surrender of possession—what constitutes.* Where the owner of a homestead of less value than $1000, after its sale under execution against him, and before the taking out of a sheriff's deed, let the assignee of the certificate of purchase into possession of one of the houses upon the premises, under an agreement the assignee should take care of and maintain him during his life, and then have the property, which contract the assignee denied, and refused to maintain the occupant: *Held*, that this was not such a surrender of the possession as to make the sheriff's deed valid, or prevent the occupant from having the sale and deed set aside.

APPEAL from the Circuit Court of Coles county; the Hon. C. B. SMITH, Judge, presiding.

Mr. T. L. McGRATH, for the appellants.

Messrs. CRAIG & CRAIG, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

It is conceded that prior to the 28th day of February, 1876, complainant, John Wilson, was seized and possessed of the premises described in the bill, as of a perfect title. Situated on the premises were two small houses, neither of them of any considerable value. The larger one contained a number of rooms, and the other one was what is called a "shanty." Both were designed for dwelling places, and were used for that purpose. During the lifetime of his wife complainant resided with her on the premises. It was their homestead. They had no children. Since her death, which occurred in November, 1875, complainant has continued to reside on the premises, but most of the time in the "shanty."

In 1872, George L. Horn obtained a judgment against complainant before a justice of the peace, on which one or more executions were issued, and returned "no property found." Afterwards a transcript of that judgment was filed in the office of the clerk of the circuit court of Coles county, in which county the parties resided, and where the property is situated. Under the provisions of the statute an execution was issued on the transcript judgment, which was by the sheriff levied on the lots involved in this litigation. At the sheriff's sale of the property it was bid off by the plaintiff in the execution for the sum of $79.70, being the amount of the judgment and costs. The certificate issued by the sheriff to the purchaser was afterwards assigned in the usual way to defendant Margaret Barrett, and after the time allowed by statute for the redemption of the property had expired, she received a sheriff's deed conveying the property to her. In some way, to be hereafter noticed, Margaret Barrett and her husband obtained possession of the larger house situated on the premises, before the sheriff's deed was in fact made to her, and they have continued to occupy the same up to the time of the decree in this case. The bill was brought by the

execution debtor against Margaret Barrett and her husband, to have the sheriff's sale of the property set aside, on the ground it was his homestead, and, under the statute, void as to him. It appears that prior to the date of the issuing of the execution on the transcript judgment, the lots were incumbered by two small mortgages. One of them amounted to $92.72, and the other about $36, although the court found, by its decree, a larger sum was due on it. Both of these mortgages were paid off by Margaret Barrett, or her husband for her. By his bill complainant offered to repay to defendant all she had advanced to remove the liens on the property, after deducting a reasonable rent for that portion of the premises occupied by defendants. On the hearing of the cause the circuit court found the premises were the homestead of complainant, and set aside the execution sale as being inhibited by law, and, on causing an account to be stated between the parties, found there was due to defendant the sum of $100, and decreed that on payment of that sum to her, within ninety days, defendants should surrender the possession of the premises to complainant. Defendants bring the case to this court, and ask a reversal of the decree of the circuit court.

There are only two principal questions that can arise on the record: First, whether the sheriff's sale of the property was void under the Homestead law; and second, if so, is complainant estopped to assert it against defendants.

Concerning the first proposition there can be no doubt. The premises, at the time of the execution sale, were worth much less than $1000, and they were the homestead of the execution debtor. He had neither released, abandoned, nor surrendered the premises. His possession at the date of the sale was exclusive. It is not claimed he ever released his right of homestead by any deed or other writing acknowledged as the statute provides. The mere statement of the facts shows the sheriff's sale of the property, at the time it was made, was void as to the execution debtor, who at the time

was a householder, in the sense that term is used in the statute, residing on the premises.

But a question of more seeming difficulty is, whether complainant is equitably entitled to relief against defendants, under the circumstances. As has been seen, it is clear complainant never released his right of homestead in the premises to any one, and it seems equally certain he did not abandon it. He has continued to reside on the premises in the "shanty," and was so residing there when he exhibited his bill. Nor can it be maintained he ever surrendered the possession of the premises to the assignee of the purchaser at the sheriff's sale. But concerning this point in the case more will be said in the progress of this brief discussion.

*Winslow v. Noble,* 101 Ill. 194, is a case where the homestead was not released by any statutory acknowledgment of the deed, but there was what was regarded as equivalent to an actual surrender of the premises, which, under the statute, was held to bar the homestead. But here nothing of that kind exists. It is true, defendants were let into possession of the larger house, but their claim of right to the possession of the garden and out-buildings was a matter of contention between the parties, sometimes resulting in actual violence.

The explanation of the transaction, as given by complainant, is, that on account of his affection for Margaret Barrett, who was a sister of his wife, and who at one time made her home with them, he desired she should have the property at his death, and it was with a view to secure that result he permitted her to have assigned to her the certificate of purchase, upon which she afterwards obtained a deed for so much less than the property was worth. Possession of the larger house was given to defendants under a contract with them to board and otherwise care for him so long as he should live. Whatever contract there may have been between the parties for maintenance, existed in parol. Defendants deny most positively there ever was any such contract, but

the circumstances all tend to strengthen the testimony of complainant in that behalf. As is usually the case, it was found it was impracticable to carry out or perform the contract for maintenance. It was not long until the parties became disaffected towards each other. An intense ill-will existed. No contract more calculated to produce disquietude and bitter hatred can be conceived of, and it is seldom any such contract is ever performed with any fairness. The result that has occurred in this case might have been anticipated by any one giving the matter the least thought.

Assuming, as the court is warranted in doing from the evidence, that defendants were let into possession of a part of the premises under the contract for maintenance, and to retain the same until the death of complainant if the contract for maintenance should be performed, it is plain there was no such entire surrender of the property to the grantee as the statute contemplates would constitute an abandonment of the homestead. Nor is there anything in the case that ought equitably to bar complainant from asserting his homestead against defendants. No equities can arise in their favor out of a contract they never performed, and the existence of which they now stoutly deny.

Some complaint is made that in stating the account nothing was allowed defendants for the board of complainant. That is not a matter of much consequence. At most, he did not board with defendants longer than three or four weeks, and if there was error in the decree in that respect, defendants were fully compensated by the error of the court in inadvertently allowing them more on one mortgage that was an incumbrance on the property, than they actually paid.

The decree of the circuit court will be affirmed.

*Decree affirmed.*