## John Silsbe
*v.*
## Napoleon B. Lucas *et ux.*

1. MORTGAGE — *resale.* Where the papers, executed by the parties, on their face show a sale and a repurchase, it will not be held a mortgage on loose and indefinite evidence. To have that effect, the evidence must more than create a doubt as to the character of the transaction.

2. SAME. Nor does the fact that L. conveyed land to S., and took a bond for a reconveyance, prove the transaction to be a mortgage.

3. SAME. Where the land of L. had been sold under a decree, and at his request S. became the purchaser of the certificate of purchase, paying the sum necessary to redeem, and L. having conveyed other lands to S., and taking back a bond for a conveyance, upon paying the money in two years, for which he had given his note, does not constitute a loan of money and a mortgage; and held that S., by purchasing the certificate of purchase, succeeded to all the rights acquired by the purchaser at the master's sale.

4. PURCHASE MONEY. The money paid by S. for the assignment of the certificate of purchase, was purchase-money, and not a loan, unless such had been the agreement between the parties.

5. PURCHASE UNDER FORECLOSURE — *two mortgages, one subject to the homestead act, and the other free from it.* A foreclosure under a mortgage executed before the passage of the homestead act, also under a junior mortgage executed after the passage of the law, and a sale in satisfaction of both mortgages, and no redemption is had under the former mortgage, the sale passes the title free from the right of the mortgagor or his wife to claim the benefit of the homestead act.

6. SAME. Had the redemption expired under such a sale, the purchaser would have acquired the title freed from the claim of a homestead right, and his assignee, before the time expires for a redemption, succeeds to all of his rights.

7. RELEASE OF HOMESTEAD — *its omission.* If the husband and wife convey the homestead, but omit to make a formal release of the homestead right, they

will not be thereby precluded from afterwards claiming the right, under the act of 1851.

8. SAME. Under the law of 1851, the husband alone might have released the homestead right, by a formally executed instrument; and where the right has not been released, it is not incumbent upon the debtor to claim it before the sale to render it availing, as the law casts the right upon him.

9. BILL PRO CONFESSO — *its effect.* If a bill to subject lands to sale, fails to allege that they are not subject to the homestead exemption, taking the bill as confessed does not amount to a confession that the lands are free from exemption, and the debtor may still claim the right.

WRIT OF ERROR to the Circuit Court of Jersey county; the Hon. D. M. WOODSON, Judge, presiding.

This was a suit in equity, brought in the Jersey Circuit Court to the April term, 1862, by Napoleon B. Lucas, and Lydia Lucas, his wife, against John Silsbe. The bill alleges that Lucas, on the 3rd day of January, 1856, borrowed of Silsbe the sum of $1,574.90, for which he executed his note, payable on the 3rd day of January, 1858, with ten per cent. interest per annum. That he procured the loan for the purpose of redeeming the S. $\frac{1}{2}$ S. W. 17, 7 N., R. 11 W., which had been sold under a decree of court, obtained by Aaron Noble against Lucas, the time for the redemption of which was about to expire. That he fully explained to Silsbe why he desired to procure the money. That it was arranged that Silsbe should pay the redemption money to Noble and take an assignment of the certificate of purchase to himself, so that he could procure a deed from the master in chancery when the time for a redemption should expire, as security in part for the money loaned.

The bill alleges, that Silsbe paid the money to Noble, and received an assignment of the certificate of purchase, and afterwards obtained a deed for the land. That, as further security, Silsbe agreed with complainant to convey to him the N. W. N. E. 19, and a piece of land containing two acres, eighty rods long and four rods wide, off of the north part of the N. W. N. W. 20, both in Township 7 north, of Range 11 west. That

on the 3rd of March, 1856, he did convey these lands to Silsbe as additional security.

The bill alleges, that on the 3rd day of March, 1856, Silsbe executed to complainant a bond for the reconveyance of all these lands, upon the payment of the note and interest and all taxes and assessments, by Lucas. That the lands constitute the farm of Lucas, and that he was in the actual possession thereof when the deed and bond were executed, and complainant was a married man, the head of a family, residing with the same, on the premises, and has never abandoned the premises since the contract with Silsbe.

That complainant having failed to pay the note and interest, Silsbe, on the 3rd day of January, 1859, filed a bill in chancery against complainant, to subject these lands to the payment of the note and interest. That a decree was rendered for the sale of the land; that the land was sold under the decree, and that Silsbe became the purchaser, and after the expiration of fifteen months he obtained a deed from the master in chancery. That complainants have never relinquished their right to the possession of the property; that he did not defend the suit by Silsbe against him, because the attorney who filed the bill treated the transaction as a mortgage, and took a decree for a sale with redemption. That the master in chancery did not cause complainants' homestead to be set off to them, but sold the lands without regard to their rights.

That complainant, Lydia, was not a party to the decree for a sale. And prays that the sale may be set aside, and they be allowed their homestead in the premises. That the same may be set off to them; and for other and further relief.

Silsbe filed his answer to the bill, in which he denies that Lucas borrowed of him $1,574.90, as alleged, but charges that, on the 19th of September, 1841, Lucas was indebted to Isaac Noble, in the sum of three hundred and thirty-four dollars and fifty cents, for which he executed his note of that date, due in three years, with twelve per cent. interest from date; that in 1852, Lucas was indebted to Aaron Noble in the sum of $466, for which he executed his note, payable in two years, with ten

per cent. interest from date; that the first note was secured by a mortgage on the S. E. S. W. 17, also S. W. S. W. 17, both in Township 7 N., R. 11 W., executed by Lucas to Isaac Noble. And the second note to Aaron Noble was secured by a mortgage, executed in like manner, on the same lands.

That Isaac Noble having died, Aaron Noble, the executor of his estate, at the September term, 1854, of the Jersey Circuit Court, as such executor, and in his own right, filed a bill to foreclose these mortgages. That he obtained a decree for the sale of the premises, to satisfy the indebtedness ; the land was sold, and bid in by Aaron Noble, under the decree; the redemption having nearly expired, Lucas and wife applied to Silsbe to purchase the same, which he then refused to do, but afterwards, on further solicitation, did purchase the land from Aaron Noble, and obtained the certificate of purchase, and afterwards obtained a deed from the master in chancery. That he paid Noble for the certificate of purchase, $1,574.90. That this land was then and now is under cultivation; that Lucas owned a timber tract, being the N. W. N. E. 19, and the two acre tract on the N. W. N. W. 20, both in Township 7 N., R. 11 W. That before he consented to purchase the land first described, he told Lucas that he would not purchase the same unless he would convey to him the tract last above described, for the reason that he wanted the timber tract to go with the other.

He alleges that he purchased of Noble in good faith and as an absolute purchase, and not as security for the note, as alleged in the bill, and did sell him the land, and took his notes, payable in one and two years; and Lucas having failed to pay the same, defendant gave him another year, and took his note for the $1,574.90, and then executed to Lucas a bond for a conveyance upon the payment of the money. That at the time of the purchase he distinctly told Lucas that he would have nothing to do with a mortgage, and would do nothing unless he became the actual purchaser, without any conditions whatever, except that he would sell the same to Lucas, and

that Lucas so understood the transaction; and positively denies that it was a mortgage to secure the money.

That respondent, at the April term, 1859, of the Jersey Circuit Court, filed his bill for the sale of the land to pay the purchase-money, and obtained a decree for the sale of the same, and has obtained a deed from the master in chancery. He charges that the premises are worth more than one thousand dollars, and if complainants are entitled to a homestead, they are not to the whole premises. He admits that complainants are in possession, and reside upon the same. He charges that a large portion of the indebtedness for which the premises were sold accrued before the fourth day of July, 1851, and all of the debt accrued before the amendatory act to the chapter entitled "Homestead," passed February 17, 1857.

*Deposition of B. B. Hamilton.* Knew parties for twenty-five years; they came here to draw up papers about a transfer of Lucas' land; Lucas and wife to convey forty acres and a two acre tract to Silsbe, and Silsbe to give bond to Lucas to convey all the lands, the eighty, the forty, and the two acre tracts, to Lucas. Asked Silsbe what he was going to do; Silsbe said he was going to give further time to Lucas to redeem, and to make himself secure, he was going to make Lucas convey to him the forty-two acres, and give a bond to him to reconvey the whole when the debt was paid, and Hamilton drew up the papers accordingly. He understood from both parties that Lucas offered a bonus to Silsbe to save the place, and afterwards it was done as aforesaid. When the notes in bond described were due, they were renewed. Silsbe's object was to secure such a title as would obviate the necessity of a resort to law, refusing to have anything to do with mortgages; understood it to be the object of Silsbe to help Lucas save his farm; don't remember that anything was said about a loan.

*Deposition of John W. Lucas.* Am acquainted with both parties; Lucas is my father. Silsbe came into field where my father was; father said to Silsbe it was about time to get the money for Noble. Silsbe said he could let him have it, if he, Silsbe, could get it in time. Afterwards heard Silsbe say

to my father that it was gold he, Silsbe, had loaned to him, Lucas, and he wanted gold in return; first conversation was before, second after land was redeemed.

*Deposition of Henry Darlington.* I have known parties more than twenty years. Silsbe told him, in answer to question whether he expected to get farm or money back from Lucas, he said the farm; we were speaking of place where Lucas lived.

Stipulation in writing that the eighty acre tract and two acre tract adjoin, and were occupied by Lucas and family; he was head of the family; that said lands were cultivated by him, and it was so at time of arrangement with Silsbe, and that Lucas was seized in fee of said lands prior to sale under mortgage to Noble.

*Deposition of Henry M. Johnson.* He has known the parties ten or eleven years. Wanted, during the years 1856 and 1857, to borrow money; went to Silsbe, who said he did not have it, that he had let Lucas have all the money he had to spare. I told him I wanted $800; I told him I had been to Chaple to get it. He asked how Chaple was to prepare papers; I told him I was to give deed, Chaple giving me bond for deed. Silsbe said that was the way he fixed it with Lucas, and would not do it any other way, and stated he would not take a mortgage. I had another conversation with Silsbe in spring of 1858. He stated that Lucas owed him about $1,800 — that Lucas had promised to pay $100 extra interest, but he had nothing but the word of Lucas for it — did not expect to get it; stated that the debt was for redeeming land from Noble — that he did it to help Lucas redeem his lands.

*John A. Campbell* sworn in open court — heard Silsbe say that if he had known the trouble he was going to have with Lucas, he would not have let him have the money.

*William Slover* testified to same effect.

*J. M. Hurd* testified, that he was agent of Aaron Noble — held the certificate of purchase, and sold it to Silsbe. It was sold in good faith so far as I know. Silsbe said he wanted to

get it, as he desired to give Lucas more time. Silsbe paid me the money.

A hearing was had in the court below, on the bill, answer, replication, exhibits and proofs. A decree was rendered, perpetually restraining defendant from executing his writ of possession, and setting aside the master's sale, and requiring him to set off to complainants their homestead in the eighty acre tract and the two acre tract, and to sell the remainder to satisfy defendant's decree, under which the lands were sold. To reverse which, this writ of error is prosecuted, and the following errors are assigned:

1. The court erred in making the injunction.

2. The court erred in making the injunction perpetual, and in setting aside the master's sale.

Mr. JAMES W. ENGLISH, for the Plaintiff in Error.

Mr. H. W. BILLINGS, for the Defendants in Error.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

This record presents the question, whether this transaction was a loan of money by plaintiff in error, and a mortgage executed by defendants in error to secure its payment; or a purchase by plaintiff in error, and a resale to defendants in error. From all of the testimony in the case, it seems to us that plaintiff in error had no design to loan money. He seems to have been willing to purchase the certificate of sale, and to hold it as his own; but with the agreement that Lucas might purchase it by paying the money it cost, within two years. It is true, that several witnesses testify they heard plaintiff in error say that he had loaned Lucas money; or that Lucas owed him money. This testimony is loose and indefinite in its character, and at most, can only create a doubt as to the true character of the transaction. It by no means, when considered in connection with the other evidence in the case, proves it to have been a mortgage. The papers, on their face, show a pur-

chase and resale, and this evidence, as we think, does not over-come the proof they afford of such a transaction.

Nor does the circumstance that defendant in error conveyed, as a part of the transaction, to plaintiff in error other property, prove that it was designed as a loan. Lucas was pressed, and desired to save his homestead, and was, no doubt, willing to convey the other property, of perhaps small value, and permit plaintiff in error to purchase the certificate of sale, if he could repurchase it of him, on the time stipulated. The papers afford evidence of a purchase and resale, and it is necessary, to change the effect of the transaction to that of a mortgage, that such evidence should be overcome by testimony showing that it was not designed to be a sale. And having purchased the certificate, plaintiff in error succeeded to all the rights to the eighty acre tract which Noble acquired by his purchase.

The facts of this case are essentially the same as those in the case of *Weider* v. *Clark*, 27 Ill. 251. It there appeared that Weider had purchased a tract of land from one Moore, and had agreed to make future payments; had entered into possession and resided upon the same with his family. But being unable to meet the payments, and being anxious to purchase other property which belonged to Clark, Weider agreed that if Clark would purchase of Moore, and pay the money, and would sell the land, with others, to him, that he would pay Clark the money agreed upon, and receive the deed from him. The arrangement was made, and the homestead act was relied upon to defeat Clark's recovery. It was there held, that it was not a loan by Clark, but that Weider owed it as purchase-money. There as here, it was claimed by the purchaser, that he had borrowed the money, and paid off the incumbrance; but it was held to be purchase-money. No difference is perceived, in principle, between these cases.

What, then, were Noble's rights in this eighty acre tract? He had foreclosed, under a mortgage executed long before the homestead law was enacted. It is true that he also foreclosed, at the same time and in the same suit, a junior mortgage on the same property, which was given after the adoption of that act.

But the sale having been made in satisfaction of that mortgage as well as the other, and defendants in error having failed to redeem from the sale on the elder mortgage, it passed a title free from all claim to the homestead exemption. If the junior mortgage had not been foreclosed, and a sale made under a foreclosure of the elder mortgage, no person would doubt that the sale would have been free from all claims of a homestead exemption. Then, as it was sold under the prior mortgage, and free from such a claim, we are unable to perceive how the foreclosure of a mortgage, which was subject to the homestead exemption, could in any manner affect the rights of the holder of the prior mortgage or those purchasing under it. Had the money necessary to redeem from the sale under the decree foreclosing the elder mortgage been tendered, and the homestead right claimed under the junior mortgage, a very different question might have been presented.

Had the redemption expired and no assignment been made, then Noble would have acquired the title free from all homestead claim. And plaintiff in error having purchased the certificate of sale under that foreclosure, he can be in no worse condition than Noble, but was substituted to all of his rights. This disposes of the questions relating to the eighty acre tract. And as the forty acre piece of timber was not adjoining the other tract, or used and occupied as a homestead, it was clearly subject to sale. In fact no question is made with reference to it.

Then, did the omission to insert a formal release in the deed conveying the two acre tract, give defendants in error the right, after the decree was passed, to pay the money, or on default, that it should be sold, and a sale made, and a redemption passed without any claim of such a right, estop Lucas from asserting the right in this proceeding? This transaction took place, after the adoption of the homestead law of 1851, and it authorized the husband to relinquish the right, independent of any action on the part of the wife. And under that law she was invested with no such right during the lifetime of her husband. At his death she could for the first time become invested with the

right. It is, however, different under the amendatory act of 1857, as it casts the right jointly upon the husband and wife.

Under the former law the husband could have released the right by a formally executed instrument, but there is no pretense that such is the case in this controversy. In the case of *Smith* v. *Marc*, 26 Ill. 150, it was said, to subject the homestead to a forced sale under process from a court of law or equity, there should be a formal release of the right to claim the exemption. And this is the language of the statute, which expressly declares that it shall not be subject to such sale. Nor does the statute require the right to be claimed, to prevent a sale. The exemption is created by law, and not by the act of the parties. It has not provided that the homestead shall only be exempt from a forced sale in case the defendant claims the right; but the statute prohibits the sale, unless the right is released in the mode it has prescribed. Then, what was the effect of the order, taking the bill as confessed, and rendering a decree that the lands should be sold to pay the purchase-money to plaintiff in error? The default admitted the truth of the allegations of the bill, and nothing more. That bill contained no allegation that the premises were not subject to the homestead exemption, hence there was no admission that the defendant, Lucas, had no right to insist upon such an exemption. Nor can the fact that Lucas failed to claim the right before the master made his sale, affect his rights. It was the duty of the purchaser at the master's sale to know whether the exemption existed. This is open and visible, and as easily known by one person as another, because, to be a homestead, the debtor or his family must reside upon the premises, and that fact may be readily and certainly known by the purchaser. It then follows that the two acre tract was improperly sold, and the decree setting aside the sale was proper, but the court erred in finding and decreeing that the eighty acre tract was subject to the homestead exemption. The decree is therefore modified so far as it relates to that tract, so as to dissolve the injunction restraining plaintiff in error from executing his writ of posses-

sion for the same. But the decree is affirmed so far as it enjoins plaintiff in error from executing his writ of possession for the two acre tract.

*Decree modified.*