## ALONZO C. ALLEN *et al.*

*v.*

## ROBERT HAWLEY *et ux.*

1. HOMESTEAD—*title necessary to the right.* Where a husband and wife gave a deed of trust upon land, a part of which was occupied as their homestead, and held by the husband under a contract of purchase, upon which there was about $400 of the purchase money unpaid: *Held,* that, upon tender of the sum due, the husband became invested with an equitable

title, and the owner within the meaning of the statute relating to homesteads, and entitled to the right of exemption against all the world except as to the party entitled to receive the balance due on the purchase, and as to him upon its payment.

2.  SAME—*right lost by consenting to decree.*  Where, in a proceeding in chancery by husband and wife, to redeem from a deed in the nature of a mortgage, and to avoid a sale of their homestead under a deed of trust containing no release of the right, the husband consented to a decree which divested him of the right:  *Held,* that the husband, by consenting to such decree, lost his right, but that the wife, not having consented thereto, nor relinquished that right when she executed the deed of trust, was not barred by the decree in the chancery suit from maintaining a bill to insist upon the exemption.

3.  It is against the policy as well as the terms of the homestead law to permit the husband to deprive the wife of her right to claim the homestead, except by removal with his family from the place.  Therefore he can make no stipulation for a decree that will deprive her of such right. If it can be done by decree, she must herself consent to it.

4.  SAME—*what is purchase money.*  Where a husband and wife executed a deed of trust upon a quarter of land, to secure a note given for borrowed money, the husband having the legal title to the east half thereof, and holding the other half under a contract of purchase upon which he owed $400, and being pressed for payment of such purchase money, he procured the party holding the indebtedness secured by the trust deed to advance the money to his vendor, and take a deed from the latter to secure him, giving to the first purchaser a bond for a deed with a clause of forfeiture, which was afterwards declared, and the whole premises sold under the deed of trust to a third party in payment of the indebtedness, the deed of trust containing no release of the homestead right:  *Held,* on bill by the wife to assert her homestead right, that the balance due for the premises was to be treated as purchase money due to the purchaser at the trustee's sale, which must be satisfied before the court would protect her in the right claimed.

5.  SAME—*account of rents and profits, and taxes and necessary repairs.* Where the purchaser under a deed of trust, which failed to release the wife's right of homestead, obtained possession of the same in a suit in equity upon a decree entered by the consent of the husband without the knowledge of the wife, and held such possession for several years, and such purchaser had succeeded to a claim for about $400 purchase money on the homestead:  *Held,* on bill by the wife to be restored to her homestead right, that the court below should have decreed to the wife a homestead upon the condition that she pay the balance of the purchase money, if any should be found due thereon after an account should be taken of

166          ALLEN *et al.* v. HAWLEY *et ux.*          [Sept. T.

Opinion of the Court.

the rents and profits of the homestead, less taxes and necessary repairs, or after deducting the interest on $1000.

6. In taking the account, if rents should be allowed, it should only be for the use of the homestead, and not of the eighty acres upon which it was situate, if that was worth more than the amount of the exemption; and if anything should remain on the purchase money, she should have been allowed a reasonable time within which to pay it before she would be deprived of the homestead.

7. SAME—*right to assert by original bill.* It has been repeatedly held that a wife, to preserve her right of homestead, where she has not signed a mortgage and released the same, is not compelled to set up the right when a foreclosure is sought, and where a foreclosure has been had and the persons entitled to the right fail to set it up as a defense, they are not estopped from asserting the right in subsequent proceedings.

8. Mr. JUSTICE SCOTT, dissenting, holds that, where a purchaser of land under a bond for a deed has such an interest in the premises as would be liable to levy and sale on execution, he has such an interest as that the homestead right would attach to the same.

9. *Also,* that where a deed of trust containing no release of the homestead had been given upon land occupied as a homestead, and the creditor paid the balance of the purchase money due thereon, taking an absolute deed therefor as a further security, and the court decreed the payment of the amount secured by the trust deed as well as the purchase money so paid, by a certain day, and, in default thereof, a strict foreclosure, when the homestead right of the husband and wife was distinctly set up in the pleadings, that there was error on the face of the proceedings, which could be reached on an original bill in the nature of a bill of review.

10. *Also,* that an original bill in the nature of a bill of review may be filed at any time without leave of court; and that such a bill may be brought for fraud in fact or fraud in law.

APPEAL from the Circuit Court of Will county; the Hon. SIDNEY W. HARRIS, Judge, presiding.

Mr. A. N. WATERMAN, for the appellants.

Mr. GEO. S. HOUSE, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

In the autumn of 1857, appellee Robert Hawley obtained a loan of $1200 from appellant. Hawley executed his note bearing date November 12th, 1857, for $1800, and at the same

time he and his wife, to secure the same, executed a deed of trust to N. D. Elwood upon the southwest quarter of section 36, township 32 north, range 9 east, in Will county, but Mrs. Hawley did not release her right of homestead. Hawley owned the fee in the east half of the quarter, and held the other under a contract of purchase from one Steel, upon which he owed about $400. When the payment matured under this purchase Hawley was unable to meet it, but obtained an extension of thirty days. During that time some arrangement, but what is not very definitely shown, was made, by which appellant advanced the money to Steel and received from him a deed for the west half of the quarter, and Hawley received from appellant a contract for a conveyance, but reserving the right to declare a forfeiture in case of a failure by Hawley to meet the payment. It was subsequently declared forfeited, and Hawley afterwards tendered the money, but appellant refused to convey, and Hawley filed his bill to redeem, treating the transaction as a loan. He afterwards filed his amended bill, in which he claimed the west half as his homestead at the time he executed the trust deed, and that he had not abandoned it, but had ever since and still occupied it as such.

Prior to filing the bill, Elwood, at the instance of appellant, sold the premises, and appellant, it seems, became the purchaser.

Subsequently a decree was, by stipulation, entered against Hawley for $2125 in favor of Allen, to be paid on or before the 1st of July, 1861. On payment, Allen was to convey all of the premises to Hawley; but, on failure to pay, he was authorized to hold the premises for the year 1861 as Allen's tenant; and it was further decreed that, if the money was not paid, Hawley's equity of redemption should stand barred and foreclosed after the year 1862.

Hawley and wife afterwards filed a bill charging that the stipulation under which the decree was rendered was fraudulent and without their knowledge or consent; and the bill

prays that the decree be set aside and vacated, and Hawley be permitted to redeem.

On a hearing on the bill, amended bill, answers, replications and proofs, the court below decreed the relief sought, and Allen appeals to this court.

A careful examination of the record fails to show that appellee has proved that the stipulation was fraudulent. He admits that he was cognizant that his attorneys were engaged in making the arrangement, and fails to state that he forbade its consummation; he only denies that he consented to the terms of the decree. A number of witnesses, who had every means of knowing the facts, swear that he did consent to the terms of the stipulation, and only contended for longer time to make payment of the money than was at first proposed, and his demand was in part conceded. His attorney in the former suit swears he read the stipulation to him before the decree was signed, and he made no objection.

All the evidence considered, we are of opinion that he knew of and consented to the terms of the decree; and, having failed to establish the charge that it was obtained by fraud, he must be bound by it and held to all of its terms and conditions.

It remains, however, to determine whether his wife, who is not shown to have consented to the decree or to have in any manner released her right of homestead, is bound by it so far as to be precluded from claiming that right in the premises. Appellees were never invested with the fee to the west half of the quarter. They, at most, held but an equitable title to that tract. It appears that Hawley had purchased it from Steel; had paid a portion of the purchase money; had entered into possession under the contract, tendered the balance of the purchase money, built a house upon it and occupied it with his family under such circumstances as gave him and his wife a homestead right, if the title was of that character as was contemplated by the general assembly when the right was conferred.

When he tendered the purchase money due on the west half he then became invested with an equitable title that he could at pleasure enforce and convert into a legal title in fee, and thereby became the owner, within the meaning of the statute, and he became vested with a right of exemption under the statute against the world except as to appellant, and against him upon the payment of the balance of the purchase money, and he only lost the right by consenting to the decree. But, as Mrs. Hawley did not relinquish that right when she executed the trust deed, her right to insist upon the exemption was not affected by the sale under it made by Elwood.

She was, as we have seen, no party to the consent that the decree might be entered, nor does the evidence even show that she knew of its entry, and hence her rights were not affected by it.

It is against the policy as well as the terms of the homestead law to permit the husband to deprive the wife of her right to claim the homestead except by removal with his family from the place.   He could, therefore, make no stipulation for a decree that would deprive her of the right.   The act of 1857 provides that, to release her right, she must in all cases sign and acknowledge the instrument by which the right is relinquished.   If it is done by decree rendered by consent, she must at least consent to its rendition. *Pardee* v. *Lindley*, 31 Ill. 174; *Moore* v. *Titman*, 33 Ill. 358; *Vanzant* v. *Vanzant*, 23 Ill. 536; *Boyd* v. *Cudderback*, 31 Ill. 113; *Patterson* v. *Kreig*, 29 Ill. 514; *Best* v. *Allen*, 30 Ill. 30.   Other cases might, if necessary, be referred to in support of the proposition.

It has been repeatedly held, that a wife, to preserve her right, where she has not signed a mortgage and released the right, is not, where a foreclosure is had, compelled to set up the right.   But she may subsequently sue for and recover it by original bill. *Mooers* v. *Dixon*, 35 Ill. 208; *Wing* v. *Cropper*, 35 Ill. 256; *Silsbe* v. *Lucas*, 36 Ill. 462; *Hoskins* v. *Litchfield*, 31 Ill. 137.   And where a foreclosure has been had, and the persons entitled to the right fail to set it up as a defense, they

170      ALLEN *et al.* v. HAWLEY *et ux.*     [Sept. T.

Opinion of the Court.

are not estopped from asserting the right by subsequent pro-
ceedings. *Booker* v. *Anderson,* 35 Ill. 66. It then follows
that Mrs. Hawley may maintain this bill for the purpose of
holding the homestead, subject only to the payment of the re-
mainder of the purchase money. This she must satisfy be-
fore the court will protect her in the right.

Appellant having advanced the money to Steel, it became
purchase money due appellant. But, under the decree to
which Hawley consented, appellant has acquired possession
and held the premises for several years. The question arises,
shall he account for rents and profits?

In the case of *Mix* v. *King,* 55 Ill. 434, it was held that
the wife might sue for and recover her homestead, notwith-
standing a recovery in ejectment against the husband, under
which she was expelled from the homestead. It was also held,
in the same case, that she might recover rents for the period
she was kept out of possession, deducting therefrom the taxes
and necessary repairs. When the same case was again be-
fore the court it was held that, inasmuch as the premises
were of larger value than the homestead exemption, the
rents should be apportioned according to the value of the
property, or it would be equitable to allow her interest on
$1000, the value of the property exempt, for the time she was
deprived of its use.

The court below should have decreed to Mrs. Hawley a
homestead in the west half of the quarter, upon the condition
that she pay the balance of the purchase money, if any should
be found due thereon after an account should be taken, and
after deducting the rents and profits of the homestead, less
taxes and necessary repairs, or after deducting the interest on
$1000.

In taking the account, if rents should be allowed, it should
only be for the use of the homestead, and not the eighty acres,
if that was worth more than the amount of the exemption.
If anything should remain on the purchase money, she should

have a reasonable time within which to pay it before she would be deprived of the homestead.

The decree of the court below is reversed and the cause remanded.

*Decree reversed.*

Mr. JUSTICE SCOTT, dissenting: I concur in reversing the decree in this cause, but dissent from the views expressed in the opinion of the court.

This bill was to review and set aside a former decree for two causes: First, there was fraud in fact in obtaining the decree; and, second, for error appearing on the face of the decree.

The only fraud charged is, that the stipulation upon which the decree was rendered was signed by counsel without the knowledge or consent of Hawley. The proof, however, does not sustain this allegation. He was advised by his counsel of the proposed agreement, and read a part, if not all of it, and consented that it should be signed by them on his behalf. I am unable to perceive any unfairness in the transaction, and if no other error intervened, Hawley would be concluded by the stipulation.

The grave question in the case arises on the other point, viz: there is error apparent on the face of the decree.

It is alleged in the bill in the original cause that the whole quarter section, at the date of the deed of trust, was the homestead of appellees, and it appears from the record that when the supplemental decree was rendered, they were still in possession—at least the family resided there.

The residence was on the west half, and it is insisted that, because Hawley only had an equitable title to that part of the quarter section, the right of homestead did not attach. I do not see how the position assumed can be maintained.

It is apparent, from the facts in the record, the payment to Steel of the balance of the purchase money due from Hawley for this tract of land was simply an additional loan, and the

deed taken by Allen in his own name was for the security. The money was advanced and·the deed taken to render available the security afforded by the deed of trust. The fact that Allen subsequently, and while the bill was pending, caused the trustee named in the deed to sell the premises, and sought to obtain the title in that way, strengthens this view. If the money was advanced merely as a loan, and the deed taken as security, although absolute in form, it would be only a mortgage. In that event Hawley would have such an interest in the premises under his bond for a deed as would be liable to levy and sale on execution, and to which the homestead would attach. It is not necessary that he should have ·an absolute title before he could avail of the benefits of the homestead law. *Conklin* v. *Foster*, 57 Ill. 104.

If, however, it shall be admitted that the money paid Steel was not an additional loan, but was for the title to the land itself, there is still a fatal error in the record.

Hawley was the head of a family, and was in possession of the premises under a contract of sale, and had paid a considerable portion of the purchase money, and his homestead right would clearly attach as to all claims other than that for the purchase money. The decree rendered on the stipulation of the parties included the amount originally loaned to Hawley as well as the amount paid to Steel. If the decree had been only for the amount claimed to be due for the purchase money, of course the homestead could not prevail against it. As to all other claims, however, it would be the paramount right.

The court rendered a decree in the nature of a strict foreclosure, barring the equity of redemption for indebtedness other than that claimed to be due for the purchase money, without disposing of the question of homestead, which had been distinctly made by the bill, and had never been released, without causing the same to be assigned under the provisions of the statute. This was manifest error, and is apparent on the face of the record itself.

Whatever may be the equities between Hawley and Allen, the decree, so far as it affected the homestead of Mrs. Hawley, was an absolute nullity. She was entitled to a homestead in the premises as against all the indebtedness of her husband, except for the purchase money or for improvements. Her rights were cut off by a decree for other indebtedness in a proceeding to which she was in no way a party. Notwithstanding her interests had never been passed upon by the court, she was ejected from her homestead, in the absence of her husband in the military service, by virtue of a writ of assistance issued against him at the instance of appellant.

The case of *Booker* v. *Anderson*, 35 Ill. 66, in some of its facts, is not unlike the case at bar. There it was said: "The wife being invested by the law with this right, she can only be deprived of it in the mode prescribed by the law. Her release of the right, a debt incurred for the purchase or improvement of the homestead, or a removal from and its abandonment as a homestead, will bar her right to interpose her claim. But the husband has no power in any other mode to affect the wife's right. His receiving a lease and paying rent to appellant has no such effect."

The fact that Hawley solemnly agreed of record to become the tenant of Allen, and may have become so in fact, did not affect the rights of the wife. She had never abandoned or released her homestead in any manner authorized by the law. Much the larger portion of the debt sought to be enforced against the homestead was confessedly for borrowed money, and not for its purchase or any improvements, and her rights therein could not be cut off by any summary decree of the court, if it be conceded it was rendered by the agreement of the husband. Such a proceeding would defeat the beneficent design of the law to preserve in every case a homestead for the wife and children. The right has its foundation in the statute and its solemn guaranties, and the husband can not be permitted to consent that the court may decree that right away.

It is insisted that this bill is simply a bill of review, and as such no relief can be granted upon it.

Like the one in *Griggs et al.* v. *Gear*, 3 Gilm. 2, it may be termed an original bill in the nature of a bill of review, and may be filed at any time without leave of court. Such a bill may be brought for fraud in fact or fraud in law. This being the character of the bill filed, it would clearly warrant the relief decreed. The entry of Allen into possession being unauthorized, the court correctly held that he was a mortgagee in possession, and that an account should be taken. Such a decree was authorized by the rule stated in *Mix et al.* v. *King*, 55 Ill 434.

I concur in reversing the decree on the ground there was error in the manner in which the court caused the account to be taken. It does not appear that anything was allowed for reasonable repairs and taxes. These were items that should have been deducted from the rental value of the premises. In other respects, the account taken seems to me to be most inequitable.