HENRY EBERT *et al.*

*v.*

ANNA M. GERDING *et al.*

*Filed at Ottawa January 25, 1886.*

1. FRAUD—*impeaching decree for fraud in obtaining it—effect of delay in taking default on bill to foreclose.* The failure of a party seeking to foreclose a mortgage, to take the default of the mortgagor and his wife for over five years after service, does not show a fraudulent intent in taking a decree of foreclosure, especially when, during such period of time, the complainant is taking testimony upon issues raised by another defendant claiming a prior judgment lien.

2. WITNESS—*competency of a party in suit by one defending as heir.* On bill by the heirs of a mortgagor against the heirs of a mortgagee, to review and set aside the decree foreclosing the mortgage rendered during the life-time of the mortgagors and mortgagees, one of the complainants, being one of the heirs of the mortgagor, is not a competent witness to disprove the sheriff's return of service of summons upon the mortgagor's wife, which occurred in the lifetime of the ancestor of the defendants, the mortgagee.

3. MORTGAGE—*of a sale and conveyance under a power—whether to operate as a discharge of the mortgage, or only as an assignment of it.* Where a mortgagee, under a power of sale, sold and conveyed the mortgaged premises to another, to enable the latter to raise money on the same for the former, there being nothing paid for the conveyance, and the mortgagee agreed with the mortgagor that the latter might redeem after such sale, it was *held,* that the mortgage was thereby virtually kept alive, and in equity the sale and conveyance by the mortgagee was to be treated as an assignment of the mortgage to the grantee, who became the agent of the mortgagee.

4. SAME—*junior incumbrancer discharging prior mortgage—right of subrogation—as to homestead, where it is released in the prior mortgage, but not in the other.* Where a junior incumbrancer, in order to protect his own security, is compelled to discharge a prior mortgage, he will in equity become subrogated to the rights of the holder of the prior incumbrance. In such case the person discharging the superior lien will be treated as its purchaser or assignee, unless the facts show that it was intended as an absolute payment.

5. And although the prior mortgage may stand discharged of record, instead of having been assigned to the junior incumbrancer, he is nevertheless entitled, in equity, to indemnify himself for such payment out of the mortgaged estate.

6. So where the holder of a prior mortgage, under a power of sale sold and conveyed the premises to one who paid nothing, but before such sale

agreed with the holder of a junior mortgage that the equity of redemption should not be thereby cut off, but that the latter should have a reasonable time in which to redeem to protect his lien, and he afterward paid the purchaser the amount necessary to redeem from the prior mortgage, and received a deed from such purchaser, it was *held*, that the junior mortgagee, on bill to foreclose his mortgage, had the right to be subrogated to the rights of the prior mortgagee, and have the prior mortgage foreclosed for his benefit.

7. And where the prior mortgage releases the homestead of the mortgagors, and the second mortgage fails to release the homestead, and the junior mortgagee, to protect himself, pays off the sum due on the first mortgage, and obtains a decree of foreclosure of both mortgages in his favor, finding the sums due on each, under which the premises are sold and conveyed to the second mortgagee, he will acquire the title to the premises free of the homestead.

8. Same—*where the homestead has terminated.* After the death of the mortgagors, husband and wife, and the youngest child has attained his or her majority, a decree of foreclosure and sale made in the lifetime of the mortgagors of the mortgaged premises will not be set aside on bill of review by reason of the premises having been the homestead of the mortgagors. In such case the heirs have nothing of which to complain.

9. Bill of review—*what is to be considered.* On a bill to review a decree for errors apparent on the face of the decree, the decree sought to be reviewed will be taken to include not only the final judgment of the court, but the pleadings also; and in passing upon any such errors assigned, the court will look through the bill and answer.

10. Under such a bill the question whether the facts found in the decree under review are in accordance with the evidence, is not involved, but only whether the court has correctly applied the law to the facts as found by it. If the findings of fact are not supported by the proofs, the remedy is by appeal or writ of error.

Appeal from the Circuit Court of LaSalle county; the Hon. Josiah McRoberts, Judge, presiding.

Messrs. Fowler Bros., and Mr. J. B. Rice, for the appellants:

The payment of the prior mortgage debt to some other person than the mortgagee, unless ratified by him, did not entitle Gerding to be subrogated to the rights of the prior mortgagee. *Beaver.* v. *Slanker*, 94 Ill. 175; Bispham's Eq. 315; 1 Smith's Leading Cases, 634.

Henry Ebert, one of the complainant's, was a competent witness for the defendants. The fact that the parties may have derived their interest by devise or descent, did not affect the character in which they prosecuted or defended. *Pigg* v. *Carroll,* 89 Ill. 205.

As to the proper construction of the statute relating to the competency of parties as witnesses, see *Langley* v. *Dodsworth,* 81 Ill. 86; *Boynton* v. *Phelps,* 52 id. 219; *Martin* v. *Jones,* 72 Mo. 24; 1 Wharton on Evidence, (2d ed.) sec. 470.

If the witnesses were incompetent as general witnesses, they were competent under the first exception to the statute, to prove all matters occurring after the death of Heinrich Gerding. *Steward* v. *Kirk,* 69 Ill. 509.

At the date of the Gerding decree the premises were not worth to exceed $1000, and the Gerding mortgage was not signed by the wife of the mortgagor. Gerding, therefore, by said decree, acquired no lien on the premises, and it did not affect the homestead right, as it was not put in issue. *Asher* v. *Mitchell,* 92 Ill. 480; *Parrott* v. *Kumpf,* 102 Ill. 426.

Gerding obtained no right in the premises in question by his decree, or by the sale, and master's deed thereunder. *Hartwell* v. *McDonald,* 69 Ill. 293; *Hartman* v. *Shultz,* 101 id. 437.

Messrs. BULL, STRAWN & RUGER, for the appellees:

The bill of review was properly dismissed, because the facts which the court found to be established from the evidence are nowhere stated in the record. *Evans* v. *Clement,* 14 Ill. 206; *Garrett* v. *Moss,* 22 id. 363.

Solyman Bell, who had become the creditor in place of Charles, received full satisfaction of the prior mortgage debt. The court found that Gerding advanced the money to protect his second mortgage, and this entitled him to be subrogated to the rights of the first mortgagee or his assigns. *Young* v. *Morgan,* 89 Ill. 199; *Beaver* v. *Slanker,* 94 id. 175.

On bill of review for errors of law, questions of fact are not open to discussion. *Garrett* v. *Moss,* 22 Ill. 363; *Griggs* v. *Gear,* 3 Gilm. 2.

As to the competency of a party as a witness, see *Bruner* v. *Bartlett,* 83 Ill. 317; *Stiger* v. *Bent,* 111 id. 328; *Mueller* v. *Rebhan,* 94 id. 142; *Kershaw* v. *Kershaw,* 102 id. 307.

Complaint is made that an ordinary decree of foreclosure was made, when of the $3116.31 due Gerding, but $881.61 of it was due on the first mortgage which waived the homestead, and appellants have shown that the mortgaged premises are not worth over $700 or $800. If, then, the first mortgage was sufficient to exhaust the property, what ground of complaint have they, especially as they are still occupying the premises?

Under the the law of 1851, the homestead was a mere exemption, and the creditor had a legal right to sell property worth over $1000, without setting off the homestead. *Hewitt* v. *Templeton,* 48 Ill. 367; *McDonald* v. *Crandall,* 43 id. 231; *Finley* v. *McConnell,* 60 id. 259.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

The bill in this case is of a two-fold character. It is a bill of review for errors apparent upon the face of the decree sought to be reviewed, and an original bill in the nature of a bill of review impeaching such decree for fraud. The latter aspect will be considered first.

On February 21, 1865, William Ebert, and Magdalena, his wife, executed a mortgage, with power of sale and waiving homestead rights, to Charles Bell, to secure a note for $975, due three years after date. The property mortgaged was the west half of the south-west quarter of lot 7, in block 12, in Ottawa. The title was in William Ebert, and the mortgage was recorded February 22, 1865. On October 26, 1866, the said Ebert alone, his wife not joining, made a mortgage to

one Heinrich Gerding, on the same lot, to secure a note for $1000, due in three years after date. The latter mortgage was recorded November 5, 1866. In May, 1871, Heinrich Gerding filed his bill in the circuit court of La Salle county, to foreclose the second mortgage, setting up that in order to protect his lien he had paid the amount due on the first mortgage, and had thereby become subrogated to the rights of the parties owning the same. He makes defendants to the bill, William Ebert, Magdalena Ebert, Solyman Bell and Charles H. Beckwith, the latter having obtained judgment against Ebert in July, 1868, and levied upon these premises on April 14, 1871, and prays for a decree of foreclosure for the amount due on the second mortgage, and the amount advanced on account of the first mortgage. It is the decree on this foreclosure proceeding which is attacked by the bill in the case at bar, as erroneous in law and fraudulent in fact.

Many charges of fraud are made, but none are proven. One circumstance appearing upon the face of the record is urged as indicating a fraudulent intent, and that is the fact that although the bill was filed on May 21, 1871, and the defendants were served on May 27, 1871, no default was entered against William Ebert and Magdalena Ebert until January 15, 1877. It is difficult to see how Gerding committed any fraud against Ebert and his wife by allowing them a period of more than five years in which to answer his bill. The return of the sheriff shows that they were duly served, and if they had desired to contest the suit they should have come in and answered, and in case complainant proceeded too slowly, should have moved to dismiss for want of prosecution. The record, however, shows that Gerding was not idle during all the time from the beginning of the suit until the final decree on July 20, 1877. Beckwith answered the bill, and proofs were taken upon the issue made by such answer. There was a contest between the mortgagee and the judgment creditor, and the order *pro confesso* against the

defendants not answering, was postponed until that contest was ended.

It is charged, however, that the court had no jurisdiction to render any decree against Magdalena Ebert, by reason of an alleged failure to get service upon her. The return of the sheriff upon the summons shows that she was duly served by a delivery to her of a copy of the summons; but it was proposed, upon the trial below, to contradict the return. Appellants offered to prove by Henry Ebert, one of the complainants below, that he was present when a copy of the writ was delivered to his father, William Ebert, by the sheriff, but that his mother, Magdalena, was up-stairs, sick, and that no copy .was left with her, or with any member of the family for her, and so, that she was not served. Objection was made to this testimony, which the court below sustained. Henry Ebert was not a competent witness, under the second section of chapter 51 of the Revised Statutes, entitled "Evidence and Depositions." William Ebert, and Magdalena Ebert, and Heinrich Gerding, all died before this bill was filed. Appellants are heirs and devisees of said William and Magdalena, and appellees are heirs of said Heinrich. Appellees are adverse parties, defending as heirs of their deceased father. Henry Ebert is a party to the suit, and directly interested in its event, and the matters about which he was called to testify occurred before the death of Heinrich Gerding. The rule in *Pigg* v. *Carroll,* 89 Ill. 205, does not apply to this case. That was a proceeding for partition of land between heirs, and for an adjustment of matters of advances made to some, and the husband of one of the parties was held to be a competent witness in behalf of his wife. The matters there involved were the relative rights of heirs or devisees as to the distribution of an estate, in proceedings by which the estate itself was in no event to be reduced or impaired. In *Mueller* v. *Rebhan,* 94 Ill. 142, this court, in explaining *Pigg* v. *Carroll,* said that the statute "was intended to protect the estates of

deceased persons from the assaults of strangers, and relates to proceedings wherein the decision sought by the party testifying would tend to reduce or impair the estate." Here appellants are strangers assaulting the estate of Heinrich Gerding. The decision sought by Henry Ebert would tend to reduce and impair the estate inherited by appellees from their deceased father. *Kershaw* v. *Kershaw,* 102 Ill. 307.

The first error complained of by appellants under their bill, as a bill of review, has reference to the subrogation of the second mortgagee to the rights of the first mortgagee. The decree rendered in Gerding's favor finds that Charles Bell, under the power of sale contained in his mortgage, sold the lot in question on August 10, 1868, to Solyman Bell, and executed a deed to him on September 12, 1868, in pursuance of such sale; that before the sale Charles Bell agreed with the mortgagor, William Ebert, that the equity of redemption should not be cut off, but that Ebert should, notwithstanding the sale, have a reasonable time within which to pay the mortgage, in such sums as he might be able, from time to time, to raise; that Solyman Bell paid no money at the sale, and it was understood between him and his brother Charles that he was not to pay any purchase money, the deed being made to him to enable him to raise funds by mortgaging the lot, in case Ebert should fail to redeem by discharging his indebtedness, as agreed; that on August 10, 1869, Gerding paid to Solyman Bell the amount necessary to discharge the first mortgage, and thereupon Solyman Bell conveyed all his interest in the property to Ebert; and the decree adjudged that Ebert pay the amount due on the second mortgage, and the amount advanced by Gerding on account of the first mortgage.

It is claimed that Gerding was not entitled to be subrogated to the rights of the first mortgagee, because his payment was not made to Charles Bell, nor ratified by him, but was in fact made to Solyman Bell. By the agreement between Charles

Bell and Ebert, which gave the latter the right to redeem and discharge his indebtedness, even after the sale was made, the mortgage was virtually kept alive, and equity will regard the deed from Charles to Solyman Bell as an assignment of the incumbrance to the latter. The conveyance to him was made to enable him to borrow money in case Ebert should fail to pay up. Gerding came forward and paid up for Ebert. Charles, by putting the title in Solyman, under the circumstances found in the decree, thereby constituted Solyman his agent. Gerding, being a junior incumbrancer, was forced, in order to protect his own security, to discharge the prior lien of the Bell mortgage, and thereby became subrogated to the rights of Bell under that mortgage. In such cases the person discharging the superior lien is treated as its purchaser or assignee, unless the facts show that it was intended as an absolute payment. (*Bishop* v. *O'Conner*, 69 Ill. 431.) According to the English practice the substance of the pleadings was recited in the decree, and so in bills of review for errors apparent on the face of the decree, the decree is understood to include not only the final judgment of the court, but the pleadings also, and in passing upon any such errors in bills of this character the court will look through the bill and answer. (*Griggs* v. *Gear*, 3 Gilm. 2.) Reading the pleadings and the decree together, in the proceedings here under review, it is evident that the discharge of the first mortgage by Gerding was not intended to be an absolute payment. Where a mortgagee has been compelled, for his own protection, to pay the amount of a prior mortgage upon the property, and the latter is discharged of record instead of being assigned to him, he is nevertheless entitled to indemnify himself for this payment out of the mortgaged estate. (Jones on Mortgages, sec. 878.) It has been held that a party loaning money on a trust deed, and paying off a prior trust deed to make his security good, would be subrogated to the rights of the holder of such prior trust deed, although the same was formally

released and not assigned. *Tyrrell* v. *Ward, Receiver,* 102 Ill. 29.

Appellants claim that in some particulars, which it is not necessary here to detail, the findings of the decree complained of are not sustained by the evidence. But in bills of review the question is not whether the facts found in the decree under review are in accordance with the evidence, but whether the court rendering such decree has correctly applied the law to the facts as found by it. (*Evans* v. *Clement,* 14 Ill. 206.) If the findings of the court upon matters of fact are not supported by the proofs introduced in the case, the remedy is by appeal or writ of error, not by bill of review.

The next error complained of has reference to the subject of homestead. In the mortgage to Charles Bell there was a waiver of homestead and dower rights, but in the mortgage to Gerding there was no waiver of the homestead. The objection is made that the decree treats the latter mortgage as though it contained such a waiver. The defendant Ebert is decreed to pay a total amount, which is made up of the amount due on the second mortgage, and also of the amount paid on account of the first mortgage; but the decree specifically states, in separate figures, first, the sum advanced by Gerding on account of the Bell mortgage, and next, the sum due on his own mortgage. The decree is one which foreclosed both mortgages—the one containing the waiver, and the one which does not contain the waiver. When Gerding paid the amount due on the Bell mortgage, and became subrogated to all the rights of Bell thereunder, he acquired the right to cut off the homestead by his foreclosure, just as Bell himself could have done.

In *Silsbe* v. *Lucas,* 36 Ill. 462, a bill was filed to foreclose two mortgages,—one, which had been executed prior to the passage of the Homestead law, and not being subject to its provisions, was the same as though it contained a waiver; and the other, which had been made after the passage of the

law, and did not contain a release of the homestead. In that case this court says: "What, then, were Noble's rights in this eighty-acre tract? He had foreclosed under a mortgage executed long before the Homestead law was enacted. It is true that he also foreclosed, at the same time and in the same suit, a junior mortgage on the same property, which was given after the adoption of that act; but the sale having been made in satisfaction of that mortgage, as well as the other, and defendants in error having failed to redeem from the sale on the elder mortgage, it passed a title free from all claim to the homestead exemption. If the junior mortgage had not been foreclosed and a sale made under a foreclosure of the elder mortgage, no person would doubt that the sale would have been free from all claims of a homestead exemption. Then, as it was sold under the prior mortgage and free from such a claim, we are unable to perceive how the foreclosure of a mortgage which was subject to the homestead exemption could in any manner affect the rights of the holder of the prior mortgage, or those purchasing under it."

As to the deed dated January 17, 1877, from Solyman Bell to Magdalena Ebert, the grantor and grantee therein were parties to the suit under review, and the grantee, if a purchaser at all, was a purchaser *pendente lite*. Moreover, the decree finds that Solyman Bell had previously deeded his interest in the premises to William Ebert. The validity of the deed of January 17, 1877, could only be sustained upon the theory that the mortgagee's deed from Charles Bell to Solyman Bell was valid, and made in pursuance of a *bona fide* sale, under the power in the Bell mortgage; but the record shows that on June 29, 1869, William Ebert, the father of appellants, filed a bill in the La Salle circuit court attacking the sale under the Bell mortgage, claiming the deed from Charles to Solyman to have been null and void, and setting up the same agreement made between himself and the mortgagee, to the effect that he should have time to redeem the

lot after the sale, as is found by the decree herein complained of. Magdalena died April 13, 1881, and her rights of dower and homestead died with her. William Ebert died June 2, 1881, and his right of homestead died with him. They lived nearly four years after the decree of July 17, 1877, and were both parties to it, and yet, during their lives, they made no attack on it. Appellants allege in their bill and have proven that they are still in the occupancy of the premises as a homestead. No one has disturbed their possession, although the master's deed made under the decree of July 17, 1877, and in pursuance of the sale therein ordered, was executed more than two years before the filing of this bill of review. The youngest of appellants is now eighteen years of age. We can not see that they have been injured.

The decree of the court below is affirmed.

*Decree affirmed.*